## LEE v. WALWORTH CO.

District Court, S. D. New York.
Dec. 11, 1940.

Harold P. Clune, of New York City, for plaintiff.

Breed, Abbott & Morgan, of New York City (T. C. Land, of New York City, of counsel), for defendant.

GODDARD, District Judge.

Plaintiff, Francis Lee, brings this suit against Walworth Company, defendant, to recover damages as a result of personal injuries alleged to have been sustained by the plaintiff, Lee, and the charge is based on the alleged negligence of the defendant. It appears that on October 11, 1938, Lee, an experienced steamfitter employed by Daniel J. Rice & Company, steamheating contractors, was engaged in installing a steamheating system in a new building in Astoria, Long Island. He was working on a scaffold which consisted of a couple of stepladders with a one-foot plank across them. While Lee was standing on this plank and attempting to connect an iron pipe about eight feet long with a cast-iron elbow which was attached to a riser near the wall a foot or two above his head, part of the elbow broke off at the end where he was inserting the pipe and he fell to the floor sustaining injuries consisting of fractures of one or more bones of his arm and shoulder.

The precise charge of negligence is that this elbow, which was manufactured by the defendant, was defective and that as a result of that defect the elbow broke and he fell and was injured.

The burden is, of course, upon the plaintiff to prove the negligence of the defendant, namely, that this elbow manufactured by the defendant had a defect in it.

I think the overwhelming weight of the testimony is that the elbow was not defective. So far as the testimony is concerned on that feature of the case we have the testimony of Mr. Rahill called by the plaintiff, who examined the pipe some weeks or months after the accident. He said that a portion of the surface along the fracture was discolored and he stated that in his opinion this indicated a defect; but his conclusion, it seems to me, is an inference based upon an inference. That discoloration may have been caused in several ways. It might have been caused by the white lead which was put upon the pipe by Lee just before he attempted to insert it in the elbow. It might have occurred in some other way that we don't know about. Furthermore, the fact that it was discolored does not necessarily indicate that there was a structural weakness in that elbow.

On the other hand, we have the testimony of four witnesses called by the defendant; Mr. Foote, who is connected with Cooper Union, and Mr. Tour, both of whom are experienced metallurgists and have no interest in the case except that they were retained by the defendant to examine the elbow; also the testimony of Mr. Curran, a metallurgist in the employ of the defendant company, and of Mr. Morehead of the defendant company, a qualified expert on metals and castings of this character, all of whom made careful examinations of the elbow, including microscopic examinations, who testified that no defect existed in the elbow except one or two small indentations on the surface due to grains of sand from the mold, which would not effect its structural strength. The defendant also produced "gamma rays" of the elbow which showed no defect, and I can find no defect upon examination of it.

On the weight of the testimony alone I should have to find that there was no defect in it, because their testimony is reliable, it seemed to me. Furthermore, we have uncontradicted testimony in the case, which I think no doubt is credible, that careful inspections of this elbow were made during the course of its manufacture; that those inspections complied with customary regulations of the building trade and the engineering profession, and were the usual inspections made by a manufacturer to detect any defect. Perhaps that alone under the rule in Smith v. Peerless Glass Company, 259 N.Y. 292, 181 N.E. 576 would determine the case. But assuming that there had been a defect in this elbow, I do not think the plaintiff could recover because the law of the State of New York, which controls in this case as laid down in MacPherson v. Buick Motor Company, 217 N. Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440, and generally followed, holds that if a manufacturer manufactures an article and it is being used by some third party who has no contractual relationship with the manufacturer, the manufacturer is not liable if such person is

injured as a result of the defect unless the article is one that is inherently dangerous if defective. That rule might be extended and probably does extend to an article which is not inherently dangerous itself, but if it is reasonably to be anticipated that it will be used for a purpose which is likely to imperil the life or limb of anybody, the manufacturer would be liable in that instance. But that is not the situation here. The manufacturer might anticipate that if this elbow was defective that steam might escape and water might escape and that property might be damaged or something of that character, but he could not have anticipated that a person standing on a stepladder would be injured as a result of falling off that stepladder when a pipe that he was working on broke. A cast-iron elbow of this character is not an inherently dangerous article; one in which, if there was a defect in it, would be likely to cause injury to a person, at least in the manner which has been described here. I think this is enough to require the court to grant a decree to the defendant dismissing the bill of complaint. There may be other reasons which should justify dismissal, but I think the reasons which I have stated are sufficient.

Now it is not encumbent upon me to say just what impression I have as to how the accident occurred and the cause of it, though I have, after listening very carefully, some idea as to it.

Accordingly, the defendant's motion for a decree dismissing the bill of complaint must be granted.

Should you desire to take an appeal, I suggest that you promptly submit findings of fact and conclusions of law.

"Mr. Clune. May I have exception to your Honor's decision?

"The Court: Yes sir.

"Mr. Clune: And when you say 'prompt submission' I wonder if we could waive findings of fact and conclusions of law?

"(To Mr. Land) Would you stipulate to waive?

"The Court: I will answer that. You may not waive findings of fact. Any doubt about that would be very definitely eliminated by the Supreme Court decisions in the last year or two. The farthest we may go is to say that it is not necessary to have findings of fact and conclusions of law unless an appeal is not taken. If an appeal is taken there should be findings of fact and conclusions of law.

"Mr. Clune: Then the time to file findings of fact and conclusions of law, which will be done by the defendant I suppose—I just wanted to limit the time.

"The Court: The reason why I state that findings of fact and conclusions of law should be presented promptly is that I want them in while the facts are still fresh in my own mind.

"Mr. Clune: The defendant would have to do it, anyway.

"Mr. Land: Both sides usually.

"The Court: If you take an appeal I suppose the other side would make the findings of fact and conclusions of law, but I think you might be interested in those findings of fact and conclusions of law yourself.

"Mr. Clune: I take exception. I take exception not as to the findings of fact and conclusions of law but as to the final outcome of the action.