5 So.2d 639
**JEFFERSON STANDARD LIFE INS. CO.**
**v. WATSON.**

**6 Div. 757.**

Supreme Court of Alabama.

Jan. 15, 1942.

London & Yancey, Geo. W. Yancey, and Fred G. Koenig, Sr., all of Birmingham, for appellant.

Taylor & Higgins and Waldrop Windham, all of Birmingham, for appellee.

182

BROWN, Justice.

This is an action on the case by the infant daughter of the lessee of one of the apartments in the Manchester Terrace Apartments, in the City of Birmingham, against the lessor, seeking to recover damages for personal injuries alleged to have been sustained as a consequence of a folding bed in the apartment on which she slept coming loose and collapsing, and enfolding the plaintiff in said bed.

The case was submitted to the jury on "Count A" of the complaint added thereto by amendment, and defendant's plea of the general issue, pleaded in short by consent with leave to give in evidence any matter which, if well pleaded, would be a defense, with like leave to the plaintiff to reply. The trial resulted in a verdict and judgment for the plaintiff for $1,750, hence this appeal.

Said Count A averred, as matter of inducement, that the defendant was the owner of said apartment which it let and leased to the plaintiff's father for a reward for use of the lessee and the members of his family, which included the plaintiff

"as a place of abode for a period of one year, to-wit, from the 1st day of October, 1937 to the 30th day of September, 1938; that on, to-wit, the 31st day of July, 1938, said Apartment No. 1-B was equipped with a device commonly known' as a folding bed which said folding bed *was one of the fixtures in said apartment* No. 1-B and was furnished by the defendant to plaintiff's father for use by plaintiff's father, the members of his family and guests, in and about the use and enjoyment of said apartment."

"And plaintiff avers that said folding bed was defective, in that said folding bed *was insecurely attached to the portion of said apartment of which it was a part,* and as a proximate result of said defect, aforesaid, said folding bed was not reasonably safe for use by plaintiff's father, the members of his family and guests, but on the contrary was imminently dangerous to users thereof when used as a bed; and plaintiff avers that such danger was known to the defendant or by the exercise of reasonable diligence should have been so known, *but was not known to plaintiff and was not revealed to plaintiff by defendant."* [Italics supplied.]

The gravamen of the count is stated thus:

"And plaintiff avers that on, to-wit, the 31st day of July, 1938, plaintiff was residing in said apartment as a member of the family and household of her father Charles F. Watson, and on, to-wit, said date while plaintiff was lying upon said folding bed said folding bed came loose from the portion of said apartment to which it was attached, and a portion of said folding bed fell upon and struck the plaintiff, and as a proximate result thereof plaintiff was injured and damaged as complained of and set out in Count 1 of her complaint."

"And plaintiff avers that the defendant negligently caused or negligently allowed plaintiff to use and lie upon said folding bed *without having exercised reasonable diligence to notify plaintiff that said folding bed was imminently dangerous to human life or limb and to the public,* including plaintiff as aforesaid, and plaintiff avers that all of her said injuries and damages were caused as a proximate result of the negligence of the defendant, as aforesaid." [Italics supplied.]

The gist of the charge is that the folding bed at the time of plaintiff's injury, when used as a bed, was *imminently dangerous to*

*human life or limb and to the public,* including plaintiff, and that defendant negligently failed to notify plaintiff of such danger.

In drawing this count as appears from its context, and the argument made here to sustain it against the attack made by the defendant's demurrer, the pleader has attempted to bring it within the exception to the general rule applicable to concocters and manufacturers of commodities intended to be placed on sale to the general public through retailers and other channels, which are inherently or imminently dangerous, when used for the purposes for which they are concocted or manufactured and sold, as illustrated in some of our decisions, notably, Altorfer Bros. Co. v. Green, 236 Ala. 427, 183 So. 415, and Sterchi Bros. Stores, Inc., v. Castleberry, 236 Ala. 349, 182 So. 474.

▉ The pertinent exception, quoted with approval from the opinion of the court in Huset v. J. I. Case Threshing Mach. Co., 8 Cir., 120 F. 865, 61 L.R.A. 303, by Mr. Justice Thomas in the Sterchi Bros. Stores, Inc., v. Castleberry, supra, is "one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not." 236 Ala. 352, 182 So. 476.

In the Sterchi Bros. case, it was further said: "When the complaint portrays a negligence [conduct] imminently dangerous to the lives and limbs of those who should use the machine imminently dangerous to the lives and limbs of all who should undertake to operate it, a concealment of this dangerous condition, a knowledge of the defendant when it was shipped and supplied to the employer in its use for the purpose for which it was made, sold, delivered, and repaired, the consequent damage to such purchaser is recoverable. This is within the rule stated by Mr. Justice Gray in the case of Wellington v. [Downer Kerosene] Oil Co., 104 Mass. 64, 67. The rule is that one who delivers an article which he knows to be dangerous to another, or that may become dangerous without repair and *which work he had contracted to do,* without notice of its dangerous nature or quality to the vendee, is liable for the injury reasonably to be contemplated,

and that is likely to result in its use, and which does, in fact, result from such negligent failure to such purchaser or to any other who is not himself at fault is actionable negligence. That is to say, the natural and probable [proximate] result of the negligence falling within the aforenamed conditions in selling, delivering and repairing the machine *when it was known* to be left in a condition imminently dangerous to the lives and limbs of those who would undertake to use it for the purpose for which it was constructed, is declared to be actionable negligence." [Italics supplied.]

In Altorfer Bros. Co. v. Green, supra [236 Ala. 427, 183 So. 417], it was said: "The law as declared in Huset v. [J. I.] Case Threshing Machine Co., supra, was approved and much of it was quoted [In the Sterchi Bros. case]. What is there declared to be the third exception to the general rule is stated very much in the language of count 5 of this complaint, except that it is said in this connection *that the injury should have been* reasonably anticipated. And this was emphasized in the MacPherson case, supra [MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440], as quoted in the Jones case, supra [Jones v. Gulf States Steel Co., 205 Ala. 291, 88 So. 21]. *Without this element,* there is no substantial basis for a claim of liability. * * *

"But the complaint alleges that the machine was 'imminently dangerous when used for said purpose.' This imposed a duty on the manufacturer not to expose to such danger an ignorant public who will likely use it. *And if defendant knows that it is imminently dangerous* when used in the customary manner, it is chargeable with anticipating such injury from its use *without exercising reasonable diligence to make such danger known* to the public likely to use it. Such negligent failure is the gist of this complaint." [Italics supplied.]

These authorities clearly demonstrate that knowledge of use imminently dangerous is essential to liability, and that said third exception is limited to one who manufactures, concocts or creates articles and commodities for sale to the general public through the usual and ordinary channels of commerce.

▉▉ The averments of Count A in the instant case are insufficient to bring the case within said third exception. When its aver-

184

ments are construed most strongly against the pleader, it does not appear that the defect existed at the time the apartment was leased and exclusive possession given to lessee or that the defendant affixed the folding bed to the building after the lease was entered into; or that it, in the lease, reserved the right to inspect or maintain in safe condition the fixtures in said apartment, or exercised such right without reservation; or that it had notice of the defect and undertook or promised to remedy the same. Otherwise stated the averments of said count do not take the case out of the influence of the general rule which holds the landlord liable only for latent defects, known to him at the time of the letting and which he conceals from his tenant. Anderson v. Robinson, 182 Ala. 615, 62 So. 512, 47 L.R.A.,N.S., 330, Ann.Cas. 1915D, 829; Life & Casualty Ins. Co. of Tennessee v. Porterfield, 239 Ala. 148, 194 So. 173.

There is another exception to said general rule, above referred to, applied in the case of Lewis v. Terry, 111 Cal. 39, 43 P. 398, 31 L.R.A. 220, 52 Am.St.Rep. 146, folding bed case. That is a tradesman who sells or furnishes articles or commodities representing them to be safe for use for the purposes they are designed to serve, when he knows them to be dangerous because of concealed defects, is liable for an injury, resulting to another, without regard to privity, which may be reasonably contemplated. That exception is not applicable here. We are therefore of opinion that the court erred in overruling defendant's demurrer to said Count A.

The evidence shows that the tenant, the plaintiff's father, had leased this same apartment for the previous year and had used this same bed, and renewed the lease for the ensuing year in which plaintiff's injury occurred. That the condition or defect causing the injury developed during its use by the tenant and his family. The evidence goes to show that the bed was fastened to the door jamb, by four 1½ inch screws and these screws, through constant use worked loose and the bed dropped loose from the door jamb and collapsed on the plaintiff. The part attached to the jamb was not concealed, and a screw driver properly applied would have remedied the defect. There is no evidence showing or tending to show that the screws used were inadequate or insufficient, if kept tightened, to hold the bed in place.

The defendant was entitled to the affirmative charge, which the court refused. We deem it unnecessary to treat the other questions argued. For the errors noted the judgment is reversed.

Reversed and remanded.

GARDNER, C. J., THOMAS and FOSTER, JJ., concur.