NORA J. McCABE *vs.* BOSTON CONSOLIDATED GAS COMPANY.

Norfolk.   November 5, 1941. — September 13, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, & RONAN, JJ.

*Negligence,* Stove, Dangerous article, Vendor, Res ipsa loquitur.

A gas stove was not an inherently dangerous article, and a finding of negligence of one, not the manufacturer, who sold and installed the stove and later at the purchaser's request examined it, toward one injured by a subsequent explosion of it was not warranted in the absence of any evidence of the cause of the explosion, even if the injured person had a contractual relation with the seller; the doctrine res ipsa loquitur was not applicable.

CONTRACT OR TORT.   Writ in the District Court of East Norfolk dated April 29, 1939.

There was a finding for the defendant by *Nagle,* J.   A report was ordered dismissed by the Appellate Division for the Southern District, and the plaintiff appealed.

In this court, the case was argued at the bar in November, 1941, before *Field,* C.J., *Donahue, Qua, Dolan,* & *Ronan,* JJ., and afterwards was submitted on briefs to all the Justices.

*J. W. Blakeney, Jr.,* for the plaintiff.

*R. W. Cornell,* for the defendant.

LUMMUS, J.   In this action of contract or tort the plaintiff seeks to recover for personal injury and property dam-

age sustained because of the explosion of a gas stove in the kitchen of her house at Quincy. On December 30, 1937, the plaintiff with her daughter Sadie went to the office of the defendant in Quincy and bought on conditional sale a gas stove from the defendant for $145. An old stove was taken at $20 in part payment, and a down payment of $25 was made. Sadie signed the memorandum of sale and the plaintiff did not sign. The defendant installed and regulated the stove in the plaintiff's kitchen about January 6, 1938. In addition to the usual gas burners and an oven, the stove contained a heating unit, regulated by a thermostat on the wall, for the purpose of heating the kitchen.

For about three weeks the stove appeared to operate properly. Then one day two loud noises were heard in the stove, and enamel chipped off and fell to the floor. The salesman who sold the stove was notified, and said that he would send a man to examine the stove and that if anything was wrong it would be corrected. He was told that the plaintiff "was scared of it." The next day men from the defendant came and apparently examined the stove, but did not repair it. The plaintiff continued to use the stove, including the heating unit. On February 3, 1938, the stove exploded, injuring the plaintiff and damaging her property.

After the explosion an employee of the defendant came, tightened a nut under the stove and put some soap on the joint. The heating unit was never used again, but the rest of the stove continued in use. The stove was not wholly paid for until May 28, 1938. The plaintiff produced as a witness a metallurgist who was familiar with the properties of brass, of which many of the fittings of the stove were made. He testified that "brass is subject to a very active type of corrosion, particularly in an atmosphere containing ammonia, including household or cleaning ammonia. Any atmosphere containing very minor traces of ammonia causes corrosion. In a brass pipe made up of a length of pipe and some connections, nuts, etc., the point on the pipe where such corrosion would be expected would be where the metal had been strained. Such straining would be caused by the tightening up of the nut to an excessive degree." The wit-

ness "was unable to tell if the nut had been tightened excessively"from observation because the joint was plastered with soap." He testified that when a piece of brass is strained it does not have any outward signs of strain. "When it is brought in contact with certain atmospheres, ammonia being one of them, a crack will develop with no other outward signs of corrosion. The crack will usually penetrate the brass and the brass springs out so that this type of corrosion is what is known as brushing; that piece splits into several pieces like a brush. If certain precautions are taken it is good practice to use brass pipe as a conduit for inflammable material. Such precaution should be that the brass is purchased with specifications which prohibit the possibility of getting strained brass. It should be tightened up in such a manner that it cannot become critically strained, and possibly should be painted. If the pipe is not painted, other precautions should be taken in the form of a notice attached to the pipe to see to it that ammonia is not brought in contact with it. There was no paint on any of the pipe connected with the heating unit."

After the plaintiff had introduced evidence of the foregoing, she rested, and the defendant also rested. The plaintiff presented six requests for rulings that were denied. We need not consider them, for the judge ruled that there was no evidence of negligence on the part of the defendant. That ruling presents the only question of law for our consideration. If that ruling was right, the case is at an end. The Appellate Division dismissed a report, and the plaintiff appealed.

The plaintiff puts her case upon negligence, and not upon breach of warranty. She seeks to hold the defendant liable for negligence in selling, installing and failing to repair the stove. We assume in her favor that she had a contractual relation to the defendant. There was no evidence that the defendant was the manufacturer, and apparently it was not. The stove was not an inherently dangerous article, and the defendant is not liable for negligence unless it knew or ought to have known of its defective nature. *Kusick* v. *Thorndike & Hix, Inc.* 224 Mass. 413, 414. *Barrango* v.

*Hinckley Rendering Co.* 230 Mass. 93, 94. *Pitman* v. *Lynn Gas & Electric Co.* 241 Mass. 322. *Giberti* v. *James Barrett Manuf. Co.* 266 Mass. 70. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 511. There was no evidence of any particular defect in the stove. There was no evidence that the brass pipe in or connected with the stove was in fact corroded or deteriorated, and no evidence that ammonia was present in the kitchen. There was no evidence of any leakage of gas before the explosion. There was no evidence that the brass pipe was strained in any way before the explosion. It cannot be inferred that the noises that caused the chipping of the enamel were caused by any defect that later caused the explosion, or that the employees who examined the stove after the chipping ought to have discovered the cause of the later explosion. In short, the cause of the explosion remains a mystery.

It is true that the plaintiff was not required to show the exact cause of the explosion (*Barnett* v. *Roberts*, 243 Mass. 233, 235; *Adams* v. *Dunton*, 284 Mass. 63, 66; *Dunbar* v. *Ferrera Bros. Inc.* 306 Mass. 90, 92; *Thomas* v. *Spinney*, 310 Mass. 749, 751), or to exclude all possibility that it resulted without fault on the part of the defendant. *Navien* v. *Cohen*, 268 Mass. 427, 431. *Adams* v. *Dunton*, 284 Mass. 63, 66. But the plaintiff had to show a greater probability that it resulted from the defendant's negligence than from a nonactionable cause. *Walker* v. *Benz Kid Co.* 279 Mass. 533, 537. *Thomas* v. *Spinney*, 310 Mass. 749, 752. This in our opinion she failed to do.

In this case it cannot be said that res ipsa loquitur. The situation was not in the exclusive control of the defendant. The characteristics of the stove were determined by its manufacturer, and its operation was in the control of the plaintiff. Under these circumstances the mere happening of the accident does not warrant an inference that it was caused by negligence of the defendant. *Conley* v. *United Drug Co.* 218 Mass. 238. *Reardon* v. *Boston Elevated Railway*, 247 Mass. 124, 126. *Di Leo* v. *Eastern Massachusetts Street Railway*, 255 Mass. 140, 143. *Goldman* v. *Boston*, 274 Mass. 329, 330. *Wilson* v. *Colonial Air Transport, Inc.* 278 Mass.

420, 425. *Lynch* v. *New York, New Haven & Hartford Railroad,* 294 Mass. 152. *Vozella* v. *Boston & Maine Railroad,* 296 Mass. 491, 493.

*Order dismissing report affirmed.*