105 So.2d 846

**Charlsie Marie DEFORE**

v.

**BOURJOIS, INC., et al.**

**6 Div. 225.**

Supreme Court of Alabama.

Oct. 9, 1958.

McDonald & Moon, Birmingham, for appellant.

Bowers, Dixon, Dunn & McDowell, Birmingham, for appellee Lee Drug Co.

MERRILL, Justice.

This appeal is from a judgment for defendants after the trial court gave the affirmative charge with hypothesis in their favor, and from the order overruling plaintiff's motion for a new trial.

Appellant, who lived in Birmingham, received a bottle of Evening in Paris perfume as a gift at Christmas time. The perfume was purchased in Montgomery. Later, when she started to open the bottle, there was a slight explosion, the bottle broke and her hand was cut and bled profusely.

The original complaint was against appellant Bourjois, a foreign corporation, Montgomery Fair, a corporation, and others. It was later amended by substituting Lee Drug Co., Inc., a corporation, for Montgomery Fair, and striking all other defendants except Bourjois. The complaint was again amended on June 28, 1956, and demurrer thereto was sustained. It was amended again and demurrer was overruled. Defendants Lee Drug Co. and Bourjois filed pleas of the general issue in short by consent. Upon trial, after plaintiff introduced her witnesses and defendants' answers to interrogatories and rested, defendants requested and received the affirmative charge with hypothesis.

Sadler & Sadler and W. J. Sullivan, Jr., Birmingham, for appellee Bourjois, Inc.

Appellant concedes in brief that Lee Drug Company was entitled to the general affirmative charge, but says that Bourjois was not, contending it was liable under the manufacturers liability doctrine.

One of the argued assignments of error is that the court erred in sustaining the demurrer to the amended complaint filed June 28, 1956. The amended complaint filed on that date contained the allegation: "Plaintiff avers that the Defendants negligently failed to select or inspect the glass container of the 'Evening in Paris' perfume received by the Plaintiff as aforesaid, which negligence consisted in this: That the glass container of the 'Evening in Paris' perfume received by the Plaintiff as aforesaid, was defective in that it contained a flaw or imperfection of such nature as to cause the said glass container to fracture upon the use by the Plaintiff of the glass container for the purpose for which it was intended by the Defendants; * * *." The complaint upon which the cause was tried contained this addition: "which such defect, flaw or imperfection a reasonable inspection would have disclosed." This was the only difference in the two counts. It will be noted that both counts charged that "the defendants negligently failed to select or inspect the glass container" and the concluding paragraph of both counts reads:

"Plaintiff avers that all of her said injuries and damages were proximately caused by the negligence of the Defendants in failing to select or inspect said glass container before offering said glass container and contents to the public for sale and use."

■ Appellant would have been required to prove a "reasonable inspection" under the allegations of the complaint of June 28. It is harmless error, if error at all, for the trial court to sustain a demurrer to a count when an amended count is added which contains all the allegations of the original count, but which adds matter which does not change the cause of action originally declared on, and places no additional burden of proof on the plaintiff. Morris v. Clark, 202 Ala. 324, 80 So. 406; McClusky v. Duncan, 216 Ala. 388, 113 So. 250; Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16; W. T. Rawleigh Co. v. Cone, 232 Ala. 127, 167 So. 274.

Appellant also argues that her attorneys were not allowed to argue the "if you believe the evidence" hypothesis of the affirmative charge which was given by the trial court.

■ The record nowhere shows any request or any refusal to allow or permit any argument to the jury. The functions of this court in its appellate character are strictly confined to the action of trial courts upon questions which are presented to and ruled upon by them. We cannot put a trial court in error for failure to rule on a matter which, according to the record, was not presented to, nor decided by him, Clancy Lumber Co. v. Howell, 260 Ala. 243, 70 So. 2d 239; Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308; or as otherwise expressed, "Courts of last resort are without authority to put the lower court in error, in the absence of some ruling of such court showing or containing error." Warren v. State, 18 Ala.App. 245, 90 So. 277.

The final assignment of error argued in brief is that the court erred in giving the affirmative charge with hypothesis.

■ The complaint, as finally amended, was framed, and the cause was tried, on the manufacturers liability doctrine. This doctrine applies in those limited cases where there is no privity of contract between the ultimate user and the manufacturer and where the manufacturer has negligently placed on the market a product which is inherently or imminently dangerous to human life or health, or which, although not dangerous in itself, becomes so when applied to its intended use in the usual and customary manner. Where the user thus sustains an injury which is the natural and proximate result of this negligence in the manufacture or sale of the article and if

the injury might have been reasonably anticipated, then the manufacturer is liable to the user under the manufacturers liability doctrine. 65 C.J.S. Negligence § 100 (b); Miles v. Chrysler Corporation, 238 Ala. 359, 191 So. 245; Altorfer Bros. Co. v. Green, 236 Ala. 427, 183 So. 415; Sterchi Bros. Stores v. Castleberry, 236 Ala. 349, 182 So. 474; Crane Co. v. Davies, 242 Ala. 570, 8 So.2d 196; Jefferson Standard Life Ins. Co. v. Watson, 242 Ala. 181, 5 So.2d 639; Jones v. Gulf States Steel Co., 205 Ala. 291, 88 So. 21, citing and discussing MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann. Cas. 1916C, 440; Birmingham Chero-Cola Bottling Co. v. Clark, 205 Ala. 678, 89 So. 64, 17 A.L.R. 667 and 672.

Was the perfume bottle in the instant case inherently dangerous or imminently dangerous? We quote from the annotation in 42 A.L.R. 1243, at 1244:

"The term 'imminently dangerous' apparently has sometimes been used as synonymous with the term 'inherently dangerous.' To get the full significance of the few cases which have considered the question here raised, it is well to bear in mind the distinction between the two terms. The courts are practically agreed that the manufacturer of an article inherently dangerous is liable to a third person for personal injuries resulting from the failure of the manufacturer to exercise due care to protect anyone having proper occasion to use the article in the manner intended, by using such precautionary means as the character of the article requires. An article may be said to be inherently dangerous where the danger lies in the nature or character of the article. Gas, gasoline, poison, gunpowder, dynamite, etc., are illustrations of articles which are inherently dangerous. The manufacturer's sale of any of these articles as and for some other article not inherently dangerous will render him liable to anyone injured thereby. * * *"

Articles or substances held not to be inherently dangerous within the meaning of the rule include a chain, Employers' Liability Assur. Corp. v. Columbus McKinnon Chain Co., D.C.N.Y., 13 F.2d 128; a bar of soap, Barrango v. Hinckley Rendering Co., 230 Mass. 93, 119 N.E. 746; a cast-iron pipe elbow, Lee v. Walworth Co., D.C.N.Y., 1 F.R.D. 569; cattle manure, McMurray v. Vaughn's Seed Store, 117 Ohio St. 236, 157 N.E. 567; carbonic acid in bottled drinks, Graham v. Cloar, 30 Tenn.App. 306, 205 S.W.2d 764; a cosmetic box decorated with a metal star, Poplar v. Bourjois, Inc., 298 N.Y. 62, 80 N.E.2d 334; a crate in which an appliance was packed, O'Neil v. American Radiator Co., D.C.N.Y., 43 F. Supp. 543; an electric body-vibrating machine, Robbins v. Georgia Power Co., 47 Ga. App. 517, 171 S.E. 218; an electric stove, Roettig v. Westinghouse Electric & Manufacturing Co., D.C.Mo., 53 F.Supp. 588; an elevator, McDonald v. Haughton Elevator & Machine Co., 60 Ohio App. 185, 20 N.E. 2d 253, Zieman v. Kieckhefer Elevator Mfg. Co., 90 Wis. 497, 63 N.W. 1021; an exercising device, Heggblom v. John Wanamaker New York, 178 Misc. 792, 36 N.Y. S.2d 777; a flatiron, Pitman v. Lynn Gas & Electric Co., 241 Mass. 322, 135 N.E. 223; a gas stove, McCabe v. Boston Consol. Gas Co., 314 Mass. 493, 50 N.E.2d 640; a gate stop, Schindley v. Allen-Sherman-Hoff Co., 6 Cir., 157 F.2d 102; hair dye, Karr v. Inecto, Inc., 247 N.Y. 360, 160 N. E. 398; a hay baler, Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N.W.2d 853; a hot water tank, Giberti v. James Barrett Mfg. Co., 266 Mass. 70, 165 N.E. 19; lubricating oil, Berger v. Standard Oil Co., 126 Ky. 155, 103 S.W. 245, 11 L.R.A.,N. S., 238; mincemeat, Salmon v. Libby, McNeil & Libby, 114 Ill.App. 258; a nailed shoe sole, Kerwin v. Chippewa Shoe Mfg. Co., 163 Wis. 428, 157 N.W. 1101, L.R.A. 1916E, 1188; a "pear-burner," Talley v. Beever & Hindes, 33 Tex.Civ.App. 675, 78 S.W. 23; a porch swing, Osheroff v. Rhodes-Burford Co., 203 Ky. 408, 262 S.W. 583; a refrigerator, Borg-Warner Corporation

(Norge Division) v. Heine, 6 Cir., 128 F.2d 657; a sidesaddle, Bragdon v. Perkins-Campbell Co., 3 Cir., 87 F. 109, 30 C.C.A. 567, 66 L.R.A. 924; a sofa, Simmons Co. v. Hardin, 75 Ga.App. 420, 43 S.E.2d 553; a steel oil drum, Moore v. Jefferson Distilling & Denaturing Co., 169 La. 1156, 126 So. 691; a spring clamp with lugs to keep lid on glass jar, Crandall v. Stop & Shop, Inc., 288 Ill.App. 543, 6 N.E.2d 685; a voting machine, Creedon v. Automatic Voting Mach. Corporation, 243 App.Div. 399, 276 N.Y.S. 609, affirmed 268 N.Y. 583, 198 N.E. 415, and an ordinary wooden bed, Field v. Empire Case Goods Co., 179 App.Div. 253, 166 N.Y.S. 509; Isbell v. Biederman Furniture Co., Mo.App., 115 S.W.2d 46.

■ In view of the foregoing authorities, we hold that a perfume bottle is not an inherently dangerous article.

Further quoting from the annotation in 42 A.L.R. 1244:

"An article may be said to be imminently dangerous where, although it may safely be used for the purpose intended if properly constructed, yet by reason of its defective construction a threatening or impending injury may be reasonably apprehended to anyone properly using the article for the purpose for which it was intended. A very good illustration of such an article is a gas stove or heater. Such an article is manufactured and sold to use in connection with gas, which is inherently dangerous. If the article is properly constructed, gas may be safely used therein. But if it is improperly constructed, injury to the person using the article may be reasonably expected."

As already noted, appellant alleged in her complaint that the bottle was defective and that a reasonable inspection would have disclosed such defect. Part of appellant's proof consisted of answers to interrogatories. Bourjois stated that Evening in Paris perfume was and had been bottled and packaged in Rochester, New York, for over twenty years; that the bottles were purchased from two glass manufacturing concerns in Baltimore, Maryland; that they were tested by the manufacturers; that Bourjois had never made an independent test of the structure and structural strength of the bottles; that there was nothing in the perfume to make it liable to explode; that the perfume was not volatile, decomposed or of an explosive nature; and that the bottle was not affected chemically by chemicals in the perfume.

Appellant's two expert witnesses testified that the bottle was thinner on one side than the other, and one of them testified that the thickness varied from .065 of an inch to .182 of an inch. As both witnesses explained, a glass bottle is weakest at its thinnest point and strongest at its thickest point, but there was no testimony that .065 inches was less than the minimum requirement for a perfume bottle or any indication as to what the minimum thickness should be. We are impressed with the reasoning in the case of Burnham v. Lincoln, 225 Mass. 408, 114 N.E. 715, wherein plaintiff, a nurse, was pouring water from a carboy into a pitcher and there was a loud explosion, breaking the carboy into pieces and cutting her hand. The water was not carbonated; but was still water in its natural state. It had been sold to the plaintiff's employer a few days before by the defendant and delivered in the five gallon carboy which was loaned by the defendant until the contents should be used. The defendant did not manufacture the carboy nor did he sell them. They were bought by him from dealers in good standing and at the usual price for goods of the best quality. He testified that so far as he knew the bottle was not defective when delivered to the plaintiff's employer and that he had never had anything like this happen before. The court said:

"* * * The plaintiff proceeds on the theory that the defendant owed her the duty of exercising reasonable care with regard to the condition of the carboy. See Elliott v. Hall, 15 Q.B.D. 315. As-

suming this to be so, the evidence would not warrant a finding that there was a breach of that duty. There was nothing inherently dangerous in the bottle or its contents. Lebourdais v. Vitrified Wheel Co., 194 Mass. 341, 80 N.E. 482; Kusick v. Thorndike & Hix, Inc., 224 Mass. 413, 112 N.E. 1025. The fact, discovered after the accident, that one side of the carboy was thicker than the other, must be considered in connection with the testimony of the plaintiff's expert that the two sides are never of the same thickness, due to the process of glass blowing. It was not a defect that was apparent to a nonexpert. And it was known to the trade that these bottles are always inspected by the manufacturer.

"The theory of the expert was that the explosion was due to the contraction of the glass, caused by contact with water of somewhat warmer temperature. He further testified that this was 'the first time he had ever heard of anything happening just like this'; and on all the evidence such an occurrence was theretofore unheard of. On these facts it cannot be said that the defendant by the exercise of reasonable care would have foreseen that such an unprecedented occurrence was likely to happen. The plaintiff has not shown that her injury was due to the defendant's failure to exercise reasonable care and prudence in the discharge of any duty he owed her. See Leavitt v. Fiberloid Co., 196 Mass. 440, 444, 82 N.E. 682, 15 L.R.A.,N.S., 855."

Appellant cites and argues the case of Miles v. Chrysler Corporation, 238 Ala. 359, 191 So. 245, 247. In that case, the Chrysler Corporation took hundreds of component parts, many, of course, supplied to it by other manufacturers, and assembled these component parts into a finished automobile. The faulty door handle in that case necessarily required fitting and assemblying by the defendant. In the instant case, however, there is but one part, the perfume bottle. The defendant here does nothing but place the perfume in the bottle, doing nothing in the process of manufacturing the bottle itself. Justice Thomas, in the Miles case, quoting from MacPherson v. Buick Motor Co., supra, states:

" * * * If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. * * * There must be knowledge of a danger, not merely possible, but probable. It is *possible* to use almost anything in a way that will make it dangerous if defective. That is not enough to charge the manufacturer with a duty independent of his contract. Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. There must also be knowledge that in the usual course of events the danger will be shared by others than the buyer. * * We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent where danger is to be foreseen, a liability will follow. * * * "

Under the undisputed testimony in the instant case, we cannot say that Bourjois had a probable knowledge of danger, or that the nature of the thing would probably cause injury, or that it was reasonably certain to place life and limb in peril when negligently made. It, therefore, seems to us that the perfume bottle was not imminently dangerous.

Plaintiff's expert witnesses testified that there is a "hydrostatic" test which a glass manufacturer might use and which would disclose the difference in thickness in this bottle. The testimony does not, however, show when this testing routine was first established, that it was even known to the defendant Bourjois, or that it was a common, accepted, or practical means of discovering such a defect, if there was in fact a defect.

The Supreme Court of California, in the case of Honea v. City Dairy, 22 Cal.2d 614, 140 P.2d 369, 371, where plaintiff, a high school student, bought a bottle of milk which broke in her hand, injuring her, and where plaintiff brought an action for damages for negligence by the defendant in supplying a defective bottle· and failing to wrap the bottle, stated in its opinion:

"The mere breaking of a bottle alone cannot give rise to an inference that defendant was negligent in failing to discover the defect. While the dairy may have had a duty to make an examination of all bottles, whether newly purchased or returned by prior customers, it is not responsible for defects that cannot be found by a reasonable practicable inspection. (Citing Cases.) In the present case there is no evidence that a feasible means of discovering the defect or flaw was available to this defendant. The language of the court in Loebig's Guardian v. Coca-Cola Bottling Co., 259 Ky. 124, 81 S.W.2d 910, is particularly appropriate. In holding that res ipsa loquitur was not applicable to the explosion of a coca-cola bottle, the court said (81 S.W. 2d at pages 911, 912): 'The defendant was not, under the circumstances, an insurer, and it was not shown that there was any more reasonably practicable method of inspection used in the industry than the method of inspection admittedly adopted by the defendant.

Suppose the bottle *was* defective. A conclusion of negligence could not arise without some showing that the defect could have been discovered by the exercise of ordinary care. * * * In the instant case, we are still left to conjecture as to the cause of the defect in the bottle and its contents or whether it was such a defect as might have been discovered by a more thorough inspection. Unless we were prepared to hold defendant as an insurer, it is hard to see how else it could be held responsible without some showing that its opportunity to exercise care was in some measure proportionate to the duty imposed—without some showing that a more thorough inspection would have been effective. Plaintiff's experts suggest various methods of testing bottles which might be applied, but it is not shown that these tests are commercially practicable or that they would have disclosed the complained-of defect. * * * We must measure the duty by ordinary standards and by consequences reasonably to be anticipated. Subject to these criteria, it is clear that the proof falls short of raising any inference of negligence.' "

It follows that appellant failed to prove some of the material allegations of her complaint—that defendants negligently failed to inspect the glass container and that it contained a flaw or imperfection as to cause it to fracture upon the use by the plaintiff of the glass container for the purpose for which it was intended by defendant—and the general charge was properly given.

The judgment of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.