The State brought a civil action under Alabama's Deceptive Trade Practices Act, Ala. Code 1975, § 8-19-1 et seq. (hereinafter "the Act"). The trial court issued a permanent injunction against Marty Nunley and Employment Resources, Inc., doing business as Kwik Jobs.[1] Nunley and Employment Resources appeal. We affirm.
Nunley operated an employment services business incorporated as Employment Resources, Inc., but which did business under the name of "Kwik Jobs." After a number of citizens complained to the attorney general, Nunley and Employment Resources entered into an "Assurance of Voluntary Compliance" agreement with the State on July 10, 1992. Nunley agreed to modify his business practices so as to comply with the Act and agreed to reimburse the State $3,500 for investigative services and attorney fees.
However, even after that agreement the attorney general's office continued to receive citizen complaints, and on March 22, 1993, it filed a civil complaint and a petition for a temporary restraining order under § 8-19-8 against Kwik Jobs and Marty Nunley, naming several private citizens as additional plaintiffs. Nunley answered, denying the allegations of the complaint, and also counterclaimed, alleging that the State had breached its July 1992 agreement with him by filing the complaint. *Page 621 
The court held a hearing on the State's petition for a temporary restraining order on April 19, 1993; the court, finding insufficient evidence to grant the T.R.O., continued the case until April 27, 1993, for a hearing on whether to enter a preliminary injunction. On April 27, the State presented additional evidence and the trial judge found that Nunley was not operating in compliance with his July 1992 agreement with the State. On May 7, 1993, the trial court issued a permanent injunction against Marty Nunley and Kwik Jobs, finding that Nunley and Kwik Jobs were "advertising services with the intent not to sell them as advertised and/or are engaging in unconscionable, false, misleading or deceptive practices in the conduct of their business." The court ordered that the defendants modify their business practices, pay monetary restitution to several clients, pay a $4900 fine for seven violations of the Act, and pay $1500 in attorney fees to the State.
 I.
On appeal, Nunley raises several allegations of error. First, Nunley contends that he did not receive the 15-day written notice of a demand for relief before the State filed its complaint, as required by § 8-19-10(e) when a private action is brought under the Act. However, Nunley did not raise this issue before the trial court and, therefore, this Court need not review it upon appeal. Sea Calm Shipping Co. v. Cooks,565 So.2d 212 (Ala. 1990); Defore v. Bourjois, Inc., 268 Ala. 228, 105 So.2d 846 (1958).
Further, as evidenced by the State's complaint and the trial court's order, the State's action for an injunction was brought under § 8-19-8, not § 8-19-10. Section 8-19-8(a) requires only that the attorney general, before bringing an action under that section, allow the party an opportunity to resolve the dispute. This requirement was met by the July 1992 "Assurance of Voluntary Compliance" agreement entered into between Nunley and the State. We also note that the trial court's order that Nunley pay restitution to several clients is not contrary to the provisions of § 8-19-8, which allows the court to grant such relief as it deems appropriate. See §8-19-8(e).
 II.
Second, Nunley contends that the trial court erred in ordering him to pay fines and restitution after the injunction hearing and without a jury trial, which he had demanded in his counterclaim against the State. Nunley argues that the provisions of the Act allowing for the assessment of penalties and restitution are not available by a hearing on the issue of whether an injunction should be granted. On the contrary, § 8-19-8, the provision of the Act controlling injunctive relief, specifically authorizes the trial judge to impose penalties and to order other appropriate relief. Thus, the trial judge's order is in accord with the Act.
Nunley also argues that he should have been accorded a jury trial on his counterclaim alleging that the State had breached its agreement with him in the July 1992 "Voluntary Assurance of Compliance" by seeking injunctive relief. His counterclaim sought damages of $2000, the amount of the $3500 penalty that Nunley had actually paid.
However, the document itself clearly shows that the State did not agree to forgo later legal action against Nunley upon his promise to comply with certain conditions. The agreement states that "subsequent failure to comply . . . will result in immediate legal action by the Attorney General." In its final order, the trial court found that "the defendants were not in compliance with the agreement and [that] as a result the State of Alabama brought this action." Thus, it is clear that the State did not breach Nunley's voluntary compliance agreement by bringing its action under § 8-19-8.
Apparently, the trial court determined that Nunley had no factual or legal basis for his counterclaim; we conclude that the court's failure to further address the counterclaim served as an adjudication of that claim, and, in effect, a summary judgment against Nunley. A summary judgment is appropriate in an action based on a written agreement where the language of the writing is unambiguous and its construction and legal effect are questions of law. Dill v.Blakeney, 568 So.2d 774 (Ala. 1990). Even if Nunley had *Page 622 
been granted a jury trial on his counterclaim, the evidence would not have supported a factual determination that he was in compliance with the agreement and, thus, if the jury had found for Nunley, the trial judge would have been required to grant a JNOV in favor of the State.[2] See McDevitt Street Co.v. Mosher Steel Co., 574 So.2d 794 (Ala. 1991).
Nunley had no right to a trial by jury in the State's action for an injunction against him. An injunction is an equitable remedy, as to which there is no jury trial right.Armbrust v. Golden, 594 So.2d 64 (Ala. 1992); Pelzer Homes,Inc. v. Alabama Power Co., 475 So.2d 558 (Ala. 1985).
 III.
Third, Nunley argues that the trial judge erred in granting relief to the State when, he contends, the trial judge had specifically found a lack of intent to defraud; such an intent is required for an action under § 8-19-5(9). Nunley's brief quotes a portion of the trial judge's oral statement made at the end of the injunction hearing:
 "I'm convinced from all the testimony that I've heard that there is a practice going on within your organization, not saying that it's intentional, but there's a practice going on and I think that perhaps part of it arises out of the fact that your folks are commission, strict commission."
(Emphasis added.)
However, in the trial judge's written final order, issued nearly two weeks after the hearing, he concluded: "Based on all of the evidence in this case, the court is of the opinion that the Defendants are in violation of the Deceptive Trade Practices Act." The permanent injunction was based upon this clear determination that Nunley and Kwik Jobs were violating the Act. Under the ore tenus standard of review, this determination bears a presumption of correctness and it will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877 (Ala. 1987); Cougar Mining Co. v. Mineral Land Mining Consultants,Inc., 392 So.2d 1177 (Ala. 1981). The record discloses ample evidence to support the trial judge's ruling. We further note that the State's complaint was also based on former §8-19-5(22), now § 8-19-5(23), which contains no intent requirement.
 IV.
Finally, Nunley has made several additional allegations of error: (1) that the trial court erred in allowing the State to amend its complaint, (2) that it erred in treating the first hearing as a hearing on a temporary restraining order and continuing the hearing on the preliminary injunction to a later date, (3) that it erred in granting the injunction, and (4) that it erred in awarding attorney fees in the amount of $1500.
However, Nunley has cited no legal authority to support his arguments. As this Court has noted previously, " 'Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all the legal research for an appellant.' " Henderson v. Alabama A MUniversity, 483 So.2d 392 (Ala. 1986) (quoting Gibson v. Nix,460 So.2d 1346, 1347 (Ala.Civ.App. 1984); Defore, supra; Ala.R.App.P. 28(a)(5). Accordingly, the trial court's judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.
[1] The State's action was originally brought against Kwik Jobs, Inc., Carol Rouse, and Marty Nunley. However, the trial court's order dismissed Carol Rouse and amended the name of defendant Kwik Jobs, Inc., to Employment Resources, Inc., doing business as Kwik Jobs.
[2] The Court finds it unnecessary to consider whether Nunley's counterclaim would have been barred by § 14 of the Alabama Constitution. *Page 623