[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1245 
This case arises from an on-the-job injury that plaintiff George Eugene Elder sustained while working at International Paper Company's Mobile plant. Elder sued E.I. DuPont De Nemours and Company (DuPont) for breach of contract and negligent failure to provide a safe working environment.
The facts are as follows:
In the early part of 1981, DuPont entered into a painting service contract with International Paper. Under the terms of the contract, DuPont was to perform maintenance paint service at International Paper's Mobile plant for a specified dollar amount. The general conditions for the painting service contract were incorporated into the main contract and included the following provisions:
 "11. SAFETY AND PROTECTION OF PROPERTY — DuPont shall, to the extent possible, protect the property of Owner and adjacent PROPERTY from damage due to its operations or operations of labor subcontractors performing work hereunder. DuPont shall also comply with all applicable provisions of federal, state and municipal laws and regulations, in addition to promptly complying, whenever possible, with any direction of Owner's representative for the prevention, detection and extinguishing of fires, or the elimination of safety hazards. . . .
". . . .
 "14. INSURANCE — Before work is commenced, and upon Owner's request, DuPont and labor subcontractors shall submit evidence of either purchased insurance or, at their option, evidence of self-insurance to Owner for the following liability limits:
 "(a) Workmen's compensation insurance as required by law including employer's liability limit of $100,000;
 "(b) Comprehensive general liability including contractual and contractor protective liability with limits of $500,000 bodily injury and $500,000 property damage;
 "(c) Comprehensive automobile liability including hired, owned, and non-owned automobile coverage with limits of Bodily Injury — $250,000/person, $500,000 occurrence, Property Damage — $500,000/occurrence.
 "DuPont shall furnish at Owner's request, prior to start of work, certificates of insurance or a letter evidencing self-insurance for itself and/or its subcontractors, for the above limits and a cancellation-clause endorsement providing that ten (10) days' prior written notice will be sent to the Insurance Department at Owner's headquarters.
 "All insurance shall be in a standard stock insurance company or a nonassessable mutual insurance company."
Under the terms of this painting service contract with International Paper, DuPont subcontracted with Coating Services, Inc. (Coating), for performance of the actual painting work at the plant. The subcontract contained the following provision:
 "10. TAXES AND INSURANCE — CONTRACTOR assumes full responsibility for the payment of all Social Security, Unemployment Compensation and other taxes and charges for all employees engaged by CONTRACTOR in the performance of the services hereunder, and he *Page 1246 
will require each of his subcontractors, if any, to do the same.
 "Unless other limits are specified by DUPONT, CONTRACTOR shall, at his expense, carry insurance of minimum limits as follows: (a) Workmen's Compensation — statutory and Employer's Liability — $100,000, (b) Public Liability Bodily Injury — $500,000, Public Liability Property Damage — $500,000 and Contractual coverage for Liability assumed under Paragraph 13, (c) Automotive Public Liability Bodily Injury (covering owned, hired and all classes on non-owned vehicles) $250,000/$500,000 and Property Damage $500,000. If any subcontractors are employed, each subcontractor must carry the same types of insurance of the same minimum limits; and CONTRACTOR shall carry Contractor's Protective Public Liability Bodily Injury and Protective Property Damage Insurance of the same minimum limits. CONTRACTOR shall maintain at DUPONT'S expense such other insurance as DUPONT may request in writing. . . ."
Coating began work on the job of paint maintenance at the plant. One of its employees at that time was the plaintiff, George Eugene Elder. On September 16, 1981, Elder, who had been promoted to the position of sandblaster less than a month before, was assigned the task of sandblasting a long cylindrical tank to prepare it for painting. After blasting all of the tank he could reach from the ground, he blasted all he could reach from the top of the tank. A one foot wide strip down the length of the tank remained.
Because rain was threatening, Elder was ordered by his supervisor to finish the unblasted strip as quickly as possible. The supervisor told Elder to find a ladder so that he could reach the unfinished strip. A manlift was available as an alternative to the ladder for completion of the job, but the supervisor decided there was not enough time to get to the manlift before the rain would begin.
Elder set the ladder up himself. He chose where to put the ladder and how to lean it against the tank. Although he found that the ground where he set the ladder was not level and that there were rocks by the adjacent railroad tracks, he proceeded to climb the ladder and began the sandblasting anyway.
Elder used a safety belt to tie himself onto the ladder. The ladder, the safety belt, and the sandblasting equipment were owned by Coating. No representatives of DuPont were present.
A sandblaster blows out a large amount of pressure, and Elder always had to lean hard into the sprayer to offset that pressure. A sandblaster can also produce sudden surges of pressure, and Elder had experienced this phenomenon before. When Elder had almost completed the sandblasting of the remaining strip on the tank, the pressure in the sandblasting hose increased suddenly and drastically. This sudden surge in pressure kicked Elder and the ladder backwards, and he plunged down hard upon the metal railroad tracks. His lower back was badly injured. He was taken to Providence Hospital, where he was admitted for care. Coating did not have workmen's compensation insurance. Elder's hospital expenses were not paid, and Elder received no workmen's compensation benefits.
Elder sued DuPont on its contract with International Paper. He claimed he was a third-party beneficiary of a promise by DuPont to require or insure that Coating had workmen's compensation insurance. He also sued DuPont for negligent failure to provide a safe working environment.
At trial, when Elder closed his case, the trial court directed a verdict in favor of DuPont on the breach of contract claims. At the close of all the evidence, Elder moved for a directed verdict as to DuPont's affirmative defenses of contributory negligence and assumption of risk. The trial court overruled that motion. The jury then returned a verdict in favor of DuPont. Elder moved at that time for judgment notwithstanding the verdict (JNOV) or for *Page 1247 
a new trial. The trial court overruled that motion, and Elder appeals. We affirm.
Elder presents six issues for review:
 I. Whether the trial court erred when it dismissed Elder's claims for breach of contract;
II. Whether the trial court erred in its charge to
the jury regarding negligence per se;
 III. Whether the trial court erred in its charge to the jury regarding the scope of DuPont's duty to Elder to provide a safe working environment;
 IV. Whether the trial court erred when it denied Elder the use of expert testimony regarding possible OSHA violations committed by DuPont;
 V. Whether the trial court erred when it overruled Elder's motion for directed verdict;
 VI. Whether the trial court erred when it overruled Elder's motion for JNOV or for a new trial.
 I
Elder alleged in the first three counts of his complaint that DuPont was under a contractual duty to ensure that its subcontractor, Coating, had workmen's compensation insurance, and that DuPont breached that duty. Elder alleges that Section 14 of the contract between DuPont and International Paper, supra, established this duty.
When the contract between DuPont and International Paper came into evidence at trial, Elder attempted to introduce further evidence as to the contract's meaning. However, the trial court ruled that Section 14 of the contract was unambiguous and stopped any further presention of evidence as to its meaning. This action was proper. Under Alabama law, it is the duty of the trial court to determine whether a contract is ambiguous, and only if the contract is ambiguous will it be sent to a jury for interpretation. Alpine Construction Co. v. Water WorksBoard of the City of Birmingham, 377 So.2d 954 (Ala. 1979).
The trial court determined, as a matter of law, that the contract did not create a duty on the part of DuPont to ensure that its subcontractor had insurance. The trial court ruled that the contract provided DuPont need furnish evidence of such insurance only if the owner of the premises, International Paper, were to make that request. It was the task of Elder to introduce evidence that International Paper made such a request. Yet Elder presented no such evidence, and the trial court directed a verdict in favor of DuPont as to the breach of contract claims.
In order to survive a motion for directed verdict, a contestant must present a scintilla of evidence in support of his claim. Ralls v. First Federal Savings and Loan Associationof Andalusia, 422 So.2d 764 (Ala. 1982). Once the trial court determined that the contract required DuPont to furnish evidence of insurance only if the owner were to so request, then proof of breach of contract became dependent upon evidence that International Paper made that request. There is not a scintilla of evidence in the record to indicate that such action was taken by International Paper. Therefore, the trial court did not err when it directed a verdict as to Elder's breach of contract claims.
 II
Elder objected to the following jury charge given by the trial court:
 "You may consider whether or not there has been any violation of a duty imposed by law. If you find that one of the — that the State law, statute that I have just called to your attention was breached or whether or not one of the OSHA Regulations was breached, if you find that existed — That doesn't mean that that's automatically negligence on the part of the defendant. What it does mean is that you may consider that in looking at all of the evidence in the case in determining whether or not DuPont was guilty of negligence or in the case of contributory negligence whether or not the plaintiff was guilty of any negligence himself. Then, of course, the next step would be you would determine whether *Page 1248 
or not that negligence or contributory negligence proximately caused or contributed to the plaintiff's injuries."
Elder alleges that this charge misstates the law of negligence per se. He argues that the only element necessary for negligence per se is the violation of a statute or regulation.
In Fox v. Bartholf, 374 So.2d 294 (Ala. 1979), this Court set out the requirements for negligence per se:
 "(1) The trial judge must determine as a matter of law that the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute.
 "(2) The trial judge must find the injury was of a type contemplated by the statute. . . .
 "(3) The party charged with negligent conduct must have violated the statute.
 "(4) The jury must find the statutory violation proximately caused the injury." (Citations omitted.)
374 So.2d at 295-96.
The trial court must have determined that the first two elements of negligence per se were met. The other two elements required by the Fox case, supra, involve jury questions.
The trial court did not err by instructing the jury that negligence per se does not arise by the mere violation of a statute or regulation. The element of proximate cause is also required. Elder ignores this element when he asks this Court to invalidate the trial court's jury charge. Therefore, we find no error in the trial court's statement of the law of negligence per se.
 III
The trial court charged the jury as to the duty owed by DuPont to Elder as follows:
 "Further, that DuPont's duty to keep the premises reasonably safe for Mr. Elder extended only to conditions existing when Mr. Elder began work and does not apply to conditions arising during the course of the work."
Elder objected to this charge. He argues that a general contractor has the duty of providing the employees of its subcontractors with a safe place to work and that this duty is nondelegable. He relies upon Pate v. United States Steel Corp.,393 So.2d 992 (Ala. 1981), for this proposition.
But Pate holds that the test for determining whether an owner of work premises will be held liable for negligence of its independent contractor is whether the owner reserved the right of control over its contractor's work. Although the holding inPate concerned a relationship between an owner and an independent contractor, its logic has been extended to situations where, as in the present case, an owner, an independent contractor, and an independent subcontractor are involved. In Knight v. Burns, Kirkley Williams ConstructionCo., 331 So.2d 651 (Ala. 1976), this Court held that, as a general rule, a prime contractor is not liable for the acts of an independent subcontractor whom he has employed. So, just as an owner has no liability to an independent contractor for injuries occurring as a result of conditions arising during and in the course of work to be performed, a general contractor has no liability to an independent subcontractor's employee who suffers an injury where the general contractor did not retain possession or control of the premises. The jury charge given, so far as it goes, is correct. It was perfected, however, by another charge given by the trial court with regard to use of equipment on the job:
 "I charge you further that if DuPont didn't own the ladder or the equipment, nor did they have control of the same on the occasion in question, nor did DuPont have any knowledge of the way in which the ladder was being used, then DuPont would not be liable to Mr. Elder in negligence as it charged in the complaint."
By charging the jury in this manner, the trial court rightly placed the issue of control into the hands of the jury. If the jury had found that DuPont had exercised this kind of control over the premises, then the *Page 1249 
jury was free to find DuPont liable for negligence.
Elder cites Boroughs v. Joiner, 337 So.2d 340 (Ala. 1976), in support of his assertion that DuPont's alleged duty to him was nondelegable. Again, the Knight case, supra, provides the key to resolution of Elder's argument. In Knight, this Court recognized two exceptions to the aforementioned general rule regarding contractor liability for its subcontractor's negligence:
 "(1) [T]he general contractor may be liable for injury to a third person where the work `is of such kind or class that the doing of it, however carefully or skillfully performed, will probably result in damage, or is necessarily and intrinsically dangerous * * *,' [and] (2) [t]he general contractor `is responsible for the manner of the performance of his nondelegable duties, though done by an independent contractor * * *'. . . ." (Citations omitted.)
331 So.2d at 655.
The Boroughs case, supra, cited by Elder was decided upon the basis of the first exception to the general rule. However, there is no hint in the record that Elder and Coating were involved in an "intrinsically dangerous" or abnormally dangerous activity. Moreover, the second exception does not apply either since there was no provision in the contract between DuPont and Coating, nor any mandate found in general law, making DuPont's duties nondelegable. Absent circumstances falling within the two exceptions, the general rule applies. Therefore, the trial court did not err in charging the jury that the extent of DuPont's duty to Elder was fixed when Coating came on the worksite and took control of the premises.
 IV
Elder argues that the trial judge erred when he denied Elder the use of expert testimony on the issue of alleged OSHA violations committed by DuPont.
This Court has held that expert testimony is not to be admitted unless it is clear that jurors themselves are not capable, from want of experience or knowledge of the subject, to draw correct conclusions from facts proved. Kennedy ElectricCo. v. Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983). Whether a particular witness will be allowed to testify as an expert is in the sound discretion of the trial court, whose decision will not be disturbed on appeal except for palpable abuse. BurroughsCorp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala. 1982).
In the Knight case, supra, this Court held that, under proper circumstances, OSHA provisions and regulations may be admissible for a jury to consider in determining the standard of care that a defendant should have followed. That holding implies that it is the duty of a jury to measure a defendant's conduct against the OSHA guidelines. Since the standard of care is to be determined by a jury in light of those guidelines, we cannot say the trial court's failure to permit expert interpretation of the effect of the OSHA provisions and regulations was a palpable abuse of discretion.
 V
At trial, DuPont asserted the affirmative defenses of contributory negligence and assumption of risk. Elder contends the trial court erred when it overruled his motion for directed verdict as to those defenses. However, a directed verdict is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people would differ. Deaton, Inc. v.Burroughs, 456 So.2d 771 (Ala. 1984). There is more than a scintilla of evidence in the record to support DuPont's affirmative defenses.
The elements of contributory negligence in the context of this kind of action are the following:
 "`The three elements . . . are that the party charged with contributory negligence not only (1) had knowledge of the condition or failure, yet (2) appreciated *Page 1250 
the danger under the surrounding conditions and circumstances and did not (3) exercise reasonable care in the premises, but with such knowledge and appreciation, put himself into the way of danger. * * *'"
Southern Minerals Co. v. Barrett, 281 Ala. 76, 84,199 So.2d 87, 94 (1967).
The defense of assumption of risk requires proof of two elements: (1) knowledge and appreciation of the risk, and (2) voluntary exposure to the risk. Employers Casualty Co. v.Hagendorfer, 393 So.2d 999, 1001 (Ala. 1981).
Evidence justifying either or both of these defenses was introduced at trial. It is undisputed that Elder had almost no training in sandblasting. Yet he set up the ladder, and chose where to put it and how to lean it against the tank in order to sandblast the unfinished strip. Despite the fact that he had always experienced difficulty in balancing himself when sandblasting and had to lean into the sprayer to compensate for the pressure exerted by the machine, he elected to climb a ladder to finish the task. Also, the ground on which the ladder was placed was rocky and uneven. Furthermore, he had experienced sudden surges of pressure from the sandblaster on previous occasions.
In light of this evidence, we cannot say the trial court erred when it overruled Elder's motion for directed verdict.
 VI
Elder argues that the trial court erred when it failed to grant his motions for judgment notwithstanding the verdict and for new trial. In reviewing a denial of a motion for judgment notwithstanding the verdict, this Court has held that the evidence must be examined in the light most favorable to the nonmoving party. Carnival Cruise Lines, Inc. v. Snoddy,457 So.2d 379 (Ala. 1984). Also, a strong presumption favors a jury's verdict and a trial court's refusal to grant a new trial. Matthews Brothers Construction Co. v. Lopez,434 So.2d 1369 (Ala. 1983).
There is sufficient evidence in the record to support the jury verdict in favor of DuPont, and we find no error in the trial court's exercise of discretion in denying Elder's motion for new trial.
No reversible error having been called to our attention, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.