565 So.2d 190 (1990)
Wilbert O. DuPONT
v.
YELLOW CAB COMPANY OF BIRMINGHAM, INC.
88-1290.
Supreme Court of Alabama.
June 22, 1990.
*191 W. Lee Pittman of Pittman, Hooks, Marsh, Dutton & Hollis, Birmingham, for appellant.
Edgar M. Elliott III and Ralph C. Bishop, Jr. of Rives & Peterson, Birmingham, for appellee.
HOUSTON, Justice.
Wilbert O. DuPont appeals from a partial summary judgment in favor of defendant Yellow Cab Company of Birmingham, Inc. ("Yellow Cab"), in this action to recover damages for breach of contract. We affirm.
Yellow Cab contracted with the Birmingham Board of Education ("the Board") to transport physically handicapped students in the Birmingham school system. The contract provided, in pertinent part, as follows:
"... Yellow Cab will transport the physically handicapped students of the Birmingham School System ... and in connection therewith will furnish all necessary vehicles and personnel and will supply fuel, insurance, licenses and vehicle tags and will perform all maintenance and make all repairs to the equipment so as to keep it in a safe and efficient operating condition at all times."
Yellow Cab subcontracted with DuPont's employer, Metro Limousine and Leasing Company ("Metro"), to provide transportation in connection with its contract with the Board. Thereafter, Metro purchased two buses from Yellow Cab to use in transporting the students. DuPont was injured when the brakes on the bus that he was driving failed, causing the bus to collide with a tree. DuPont sued Yellow Cab, along with others, alleging that under its contract with the Board Yellow Cab had a nondelegable duty to properly maintain the bus so as to keep it in a safe operating condition; that that duty flowed to him as an intended third-party beneficiary of the contract; and that Yellow Cab had breached the contract by failing to properly maintain the bus. The trial court entered a partial summary judgment in favor of Yellow Cab, stating that it could find no evidence tending to show that DuPont was an intended third-party beneficiary under the contract between the Board and Yellow Cab. That judgment was made final pursuant to Rule 54(b), A.R.Civ.P.
DuPont argues on appeal, as he did in the trial court, that there is a triable issue of fact as to whether he was an intended third-party beneficiary of the contract between the Board and Yellow Cab. Yellow Cab argues, on the other hand, that there is no evidence from which it can be reasonably inferred that DuPont was an intended third-party beneficiary of its contract with the Board. Yellow Cab argues, in the alternative, that it had no contract with the Board because, it says, by accepting the subcontracting services of Metro, the Board formed a new contract with Metro by way of a novation.
Summary judgment was proper in this case if there was no genuine issue of material fact and Yellow Cab was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on Yellow Cab to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to DuPont to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against him. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990). In determining whether there was a genuine issue of material fact, this Court must view the evidence in a light most favorable to DuPont and must resolve all *192 reasonable doubts against Yellow Cab. Because this action was pending on June 11, 1987, the applicable standard of review is the "scintilla of evidence" rule. Ala. Code 1975, § 12-21-12.
Initially, we note that the record does not support Yellow Cab's argument that, as a matter of law, a new contract was formed between Metro and the Board by way of a novation and that the effect of it was to release Yellow Cab from liability under its contract with the Board. We simply cannot conclude from the evidence that, as a matter of law, the Board relieved Yellow Cab of its obligations under the contract and established a new contract with Metro for the transportation of the students. See Warrior Drilling & Engineering Co. v. King, 446 So.2d 31 (Ala. 1984).
We do agree, however, that the record supports the trial court's entry of summary judgment. In Holley v. St. Paul Fire & Marine Insurance Co., 396 So.2d 75 (Ala.1981), this Court reiterated the well-established rule that one who seeks recovery in contract as a third-party beneficiary must establish that the contract was intended for his direct, as opposed to his incidental, benefit. After reviewing the record, we conclude that Yellow Cab established that it was entitled to a judgment as a matter of law. The only reasonable inference that could be drawn from the evidence was that the contract between Yellow Cab and the Board was intended to bestow a direct benefit on the students who were to be transported under the terms of the contract, not on DuPont. In opposition to the motion, DuPont argued that there could be drawn from the evidence a reasonable inference that Yellow Cab and the Board contracted to directly benefit not only the students, but also the one person who would routinely be aboard the bus while it was in servicethe driver. The trial court reasoned, however, that although DuPont's safety was indeed contingent on the bus's being properly maintained, this fact alone did not warrant a reasonable inference that the contracting parties intended to bestow upon DuPont a direct benefit under the contract. We agree. At the time it contracted with the Board to transport the students, Yellow Cab was under an obligation, independent of the contract, to maintain its fleet of vehicles for the safety of its drivers. Ala. Code 1975, § 25-1-1. Furthermore, Yellow Cab was subject to the Alabama Workmen's Compensation Act, Ala.Code 1975, § 25-5-1 et seq. ("the Act"). Likewise, every company, including Metro, that might have been reasonably contemplated by Yellow Cab as a potential subcontractor was under the same obligation to maintain its vehicles for the safety of its drivers and was also subject to the Act. Consequently, we think the only reasonable inference that can be drawn from the evidence is that Yellow Cab contracted with the Board with full knowledge that the driver of a vehicle used in connection with the transportation of the students was owed a duty of due care, independent of the contract, and would be compensated under the Act for his personal injuries in the event of an accident. This leads us to the conclusion that the primary objective of the contract between Yellow Cab and the Board was to impose on Yellow Cab a nondelegable duty to maintain the vehicles, thereby further ensuring the safe and efficient transportation of the students. Yellow Cab's promise to the Board to properly maintain the vehicles that were to be used in the transportation of the students simply cannot be reasonably construed as intending primarily to benefit DuPont. Instead, it appears to us that Yellow Cab's promise to stand behind the maintenance of the vehicles, notwithstanding the fact that certain transportation services might be provided through a subcontractor, was a material, bargained-for provision in the contract to further ensure the safety of the students. Any benefit derived by DuPont from the contractual undertaking of Yellow Cab was, necessarily, incidental.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
*193 HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting).
Because the contract between the Birmingham Board of Education and Yellow Cab Company, in my opinion, unequivocally gives a third-party beneficiary status to Wilbert O. DuPont, I dissent.
DuPont takes the position that he was an intended third-party beneficiary of the contract between the Birmingham Board of Education and Yellow Cab, from which, he says, a nondelegable duty flowed.
Yellow Cab, on the other hand, takes the position that "the duties to be performed under the contract between Yellow Cab and the Board were assignable." Furthermore, says Yellow Cab, because the Board accepted the services of the assignee, Metro Limousine and Leasing Company ("Metro"), a new contract was formed by way of a novation;[1] thus, Yellow Cab argues, it was released from its duties in regard to the assignment and it owes no duty to the Board or to any other beneficiary of the contract.
Necessarily antecedent to any discussion of DuPont's third-party-beneficiary status is a determination of whether Yellow Cab's duty to maintain the buses was, in law and in fact, delegable.
In the instant case, there exist both an assignment of rights and a delegation of duties. The assignment-delegation distinction is relatively straightforward: rights are assigned; duties are delegated. When a party to a contract transfers his rights under the contract to a third party, he has made an assignment. If a party to the contract appoints a third party to render performance under the contract, he has made a delegation. Generally speaking, upon assignment of a right, the assignor's interest in that right is extinguished; however, upon the delegation of a contractual duty, the delegating party remains liable under the contract, unless the contract provides otherwise or there is a novation.[2] Calamari and Perillo's Hornbook on Contracts, § 18-25 (3d ed.1987). Professor Knapp analogizes the assignment-delegation distinction thusly: "If assigning a right is like passing a football, then delegating a duty resembles more the dissemination of a catchy tune or a communicable disease: Passing it on is not the same as getting rid of it." C. Knapp, Problems in Contract Law 1161 (1976).
A duty is generally delegable unless the obligee (here, the Board) has a substantial interest in having the delegator (here, Yellow Cab) perform. Regarding this general rule, the Supreme Court of California wrote:
"All painters do not paint portraits like Sir Joshua Reynolds, nor landscapes like Claude Lorraine, nor do all writers write dramas like Shakespeare or fiction like Dickens. Rare genius and extraordinary skill are not transferable, and contracts for their employment are therefore personal, and cannot be assigned. But rare genius and extraordinary skill are not indispensable to the workmanlike digging down of a sand hill or the filling up of a depression to a given level, or the construction of brick sewers with manholes and covers, and contracts for such work are not personal, and may be [delegated]." *194 Taylor v. Palmer, 31 Cal. 240, 247-48 (1866).
Thus, if the contract is premised on the artistic skill or unique abilities of a party, the contractual duties are not delegable.
Parties to a contract, however, have the unfettered freedom to determine whether duties under the contract may be delegated. The instant contract between the Board and Yellow Cab, however, contains no language prohibiting delegation. Too, the delegation of particular duties may be prohibited by statute or by public policy.
If the delegator (Yellow Cab) delegates a duty to a delegatee (Metro), and if the delegatee performs in accordance with the contract, the duty of the delegator (Yellow Cab) would be absolved. A valid delegation of a duty, however, does not release the delegator from liability, but makes him secondarily liable, after the delegatee. The duties of the delegator may be discharged, then, only through performance of the contractual duty owed. See Calamari and Perillo, supra.
As a general proposition, general contractors owe no liability to an independent subcontractor's employee who suffers an injury, where the general contractor was not in possession or control of the premises. Elder v. E.I. DuPont de Nemours & Co., 479 So.2d 1243 (Ala.1985). As is usually the case, this "general rule" is saddled with exceptions. Elder at 1248-49. The first exception involves an activity or instrumentality that is "abnormally or intrinsically dangerous." Id. There is nothing in the record to suggest that the first exception is applicable here. The second exception applies when the general contractor is responsible for the manner of the performance of a nondelegable duty. Id. The Elder court also noted that a nondelegable duty may be found in general law or in a contract. Id.
DuPont concedes that there is no general law that places a nondelegable duty on Yellow Cab, but argues that the contract between Yellow Cab and the Birmingham Board of Education does place a nondelegable duty on Yellow Cab. DuPont points out that the contract between the Birmingham Board of Education and Yellow Cab contained a provision whereby Yellow Cab was obligated to "perform all maintenance and make all repairs to equipment so as to keep it in a safe efficient operating condition at all times." It is from this provision, says DuPont, that a nondelegable duty emanates.
In support of his position, DuPont places much emphasis on the case of Holley v. St. Paul Fire & Marine Insurance Co., 396 So.2d 75 (Ala.1981). In Holley, the plaintiff, a visitor at a hospital, fell on the hospital's premises. She alleged that she was a "third-party beneficiary" of a contract between the hospital and a service firm wherein the service firm had contracted to perform inspections of the premises for safety and to maintain the lighting of the public areas at the hospital. Additionally, the plaintiff claimed that she was a "third-party beneficiary" of a contract between the hospital and an insurance company whereby the insurance company was to perform safety inspections. The trial court granted the defendant's motion to dismiss the plaintiff's third-party-beneficiary claims. In analyzing whether the plaintiff was an intended beneficiary of the contracts, the Holley Court wrote:
"Can there be any doubt that the hospital board does not make a maintenance contract for the direct benefit of the board members themselves? For whom does the board maintain the hospital? Obviously for those who will inhabit it for purposes of treatment, rehabilitation and cure. We may take judicial knowledge that visitors are not discouraged from using hospital facilities but, in fact, have physical hospital facilities provided for them. Thus they are expected to play a role in the scheme of patient hospitalization. Hospital maintenance, therefore, is necessary for their presence as it is for other expected occupants of hospital facilities, and the parties to a contract providing such maintenance intend visitors to derive a direct benefit from the rendition of those services."
396 So.2d at 80.
In comparing the Holley case to the instant case, DuPont seizes on the language *195 "play[s] a role in the scheme of" used in Holley. Specifically, DuPont argues as follows:
"It should be emphasized that the Court took judicial notice that visitation is encouraged and expected, and that visitors `play a role in the scheme of patient hospitalization.' In the present case, bus driver participation is not simply encouraged but required. Bus driver participation is not merely expected but is essential and no one plays a more vital role in the scheme of student transportation than the bus driver. Therefore, a `safe and efficient' school bus is as necessary for the bus driver's safety as it is for other `expected occupants' of the bus.
"In the case at bar, Mr. DuPont is similar to the Plaintiff in Holly [Holley] who was a visitor at the hospital. He derived a direct benefit from the maintenance contract between the Birmingham Board of Education and Yellow Cab Company. It is indisputable that bus drivers are critical to the safe transportation of pupils. In the same way that hospital visitors `play a role in the scheme of patient hospitalization', a school bus driver plays a vital role in the scheme of transporting school children and should be held to be an intended beneficiary of Yellow Cab Company's contractual obligation to maintain the school buses in a `safe and efficient operating condition.'"
A reading of the contract between the Birmingham Board of Education and Yellow Cab leads me to the conclusion that Yellow Cab's duty to transport the children and to maintain the buses was, in fact, a delegable duty. However, the mere fact that its duty is delegable does not relieve Yellow Cab of its obligations under its contract with the Birmingham Board of Education. This determination, as emphasized earlier, is premised on one of the most fundamental tenets of contract law, which is that one may not simply delegate a duty to another and thereby discharge his own obligations to perform that duty. Callon Petroleum Co. v. Big Chief Drilling Co., 548 F.2d 1174 (5th Cir.1977).
Thus, the pivotal question is, to whom is that duty owed? This rhetorical question can be answered by naming those individuals who fall within the class commonly referred to as intended third-party beneficiaries.
Section 133 of the original Restatement of Contracts (1932) affords a person third-party-beneficiary status if he qualifies as either a creditor or a donee beneficiary. A person can enforce a contract as a donee beneficiary if it appears that "the purpose of the promisee in obtaining the promise... is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary." A person can enforce a contract as a creditor beneficiary if "no purpose to make a gift appears... and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." A person who can not fit within either of the categories is referred to as an "incidental" beneficiary and has no rights under the contract.
The Restatement (Second) of Contracts (1981), however, has forsaken the terms "donee" and "creditor" because, according to the introductory note to Chapter 14 in the Restatement (Second), they "carry overtones of obsolete doctrinal difficulties."[3] "The Restatement (Second) of Contractsthe generally accepted text for beneficiary rightscategorizes beneficiaries as either `intended' or `incidental'" Note, Third Party Beneficiary and Implied Right of Action Analysis: The Fiction of One Governmental Intent, 94 Yale L.J. 875, 877-78 (1985).
*196 Restatement (Second) of Contracts § 302 (1981) reads:
"1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
"2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."
As the driver of the bus, DuPont was clearly a key player in effecting the intent of the parties to fulfill their mutual obligations under the contract. Thus, the "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties." We must go further, however, and test the instant facts under either subsection (1)(a) or (1)(b).
The commentary to § 302 (particularly by comments b & c) refers to a promise that falls under subsection (1)(a) as "a promise to pay the promisee's debt," and one that comes under subsection (1)(b) as a "gift promise." Comment d further indicates that a person who fails to qualify as an intended beneficiary under subsection (1)(a) or (1)(b) may nevertheless qualify as an intended beneficiary "if the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right upon him." Calamari and Perillo's Hornbook on Contracts § 17-4 (3d ed.1987). See, also, Pennsylvania Liquor Control Board v. Rapistan, Inc., 472 Pa. 36, 371 A.2d 178 (1976), wherein the Pennsylvania Supreme Court stated:
"[A] third party is an intended beneficiary only if he can reasonably rely on the contract as manifesting an intent to confer a right on him. Restatement (Second) of Contracts § 133 (comment d) (Rev. ed. Tentative Drafts 1-7, 1973). Thus, although there is no requirement that the intent to create an intended beneficiary be expressed in the contract, there must still be evidence, sufficient to permit reasonable reliance, that the promisee and promisor intended to confer a right on a third party."
472 Pa. at 45, 371 A.2d at 182.
In discussing the distinction and similarities between the first and second Restatements, Professors Metzger and Phillips have this to say:
"[I]t is sufficient to note that the rules just quoted almost certainly do not mark a radical break with the past. One commentator, for example, regards subsections (a) and (b) of section 302(1) as similar to the traditional categories of creditor and donee beneficiary. Comment d to section 302, however, departs from prior law by introducing the reliance element lacking in the section's text.... At first blush, comment d might be regarded as yet another Restatement (Second) application of promissory estoppel to an area formerly governed by traditional contract principles. Read literally, however, the comment differs from section 90 by not requiring actual reliance by the third party. In each of comment d's six illustrations, moreover, the third party was an intended beneficiary even though no actual reliance was specifically stated."
Metzger and Phillips, Promissory Estoppel and Third Parties, 42 Sw.L.J. 931, 947-48 (1988).
At any rate, it is apparent that the drafters of the Restatement (Second) of Contracts intended for the "intent to benefit" test to be interpreted more broadly than the original test based on donee and creditor categories. Note, Third Party Beneficiaries and the Restatement (Second) of Contracts, 67 Cornell L.Rev. 880 (1982).
In Beverly v. Macy, 702 F.2d 931 (11th Cir.1983), the court held that the plaintiff was an intended beneficiary of a service agreement between the National Flood Insurers Association and the insurer responsible for servicing the plaintiff's flood policy. In discussing the importance of the intentions of the parties and the plaintiff's *197 reliance, as they pertained to the plaintiff's status as an intended beneficiary, the Beverly court, quoting from the Restatement (Second) of Contracts § 308, held:
"It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made.
"....
"... [W]hen determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation. See Ross v. Imperial Constr. Co., 572 F.2d [518] at 520-521 [5th Cir.1978]; Restatement (Second) of Contracts § 302, Reporters Note."
702 F.2d at 940.
The Beverly court further noted:
"[T]he economic motivation of the parties is not dispositive; rather, `the intention of the parties disclosed by the writing and surrounding circumstances known to the parties, and not their motive, determines the rights of the third party beneficiary.' Mutual Benefit Health & Accident Ass'n of Omaha v. Bullard [270 Ala. 558], 120 So.2d [714] at 723 ... [1960]; see Fidelity & Deposit Co. of Baltimore v. Rainer, 220 Ala. 262, 125 So. 55, 58-59 (1929). Thus, the promisee need not be motivated solely by its desire to bestow a benefit upon the third party. See Avco Delta Corp. Canada Ltd. v. United States, 484 F.2d [692] at 702-03 [7th Cir.1973] (promise need not be for sole benefit of third-party as long as it was for direct or substantial benefit); Harris v. Board of Water & Sewer Comm'rs of Mobile [294 Ala. 606], 320 So.2d [624] at 628 [1975] (though promisee enjoys some degree of direct benefit from the contract, most direct benefit inures to third-party beneficiaries).... Thus the question of `intent to benefit' is more complex than an inquiry into whether the primary or sole purpose (or motive) was to benefit a nonparty to the contract.
"In probing the intention of the parties, reliance on the part of the putative third-party beneficiary can be a significant factor. See Restatement (Second) of Contracts § 302, Comment d."
Id. at 941.
Yellow Cab's principal argument in support of its motion for summary judgment on DuPont's "intended third-party-beneficiary" claim is that the contract between the Birmingham Board and Yellow Cab was intended for the sole benefit of the school children. Yellow Cab maintains that DuPont was, at best, an incidental beneficiary, and, thus, that he has no right of suit under the contract. Yellow Cab further maintains that at the time the contract was signed it was intended that its own employees would be used to fulfill its obligations under the contract. Specifically, Yellow Cab states in its brief that "[t]he law of Alabama provides that every employer shall furnish a `reasonably safe' work place for its employees," citing Ala.Code (1975), § 25-1-1, and it adds, "Accordingly, it would be redundant and without purpose for Yellow Cab to intend to directly benefit its employees by way of a contract that provides for maintenance of buses." I disagree.
There is nothing of merit in Yellow Cab's contention that it is relieved of liability on the ground that at the time of the contract it was assumed that its employees would be used in the transportation process, and that those employees would be covered under the worker's compensation statute. This argument would have merit but for the fact that Yellow Cab elected to subcontract with Metro. There is no requirement that the intended beneficiary be in existence or be identifiable at the time the contract was entered into; it is sufficient "that he be identifi[able] at the time performance is due." 4 Corbin, Contracts § 781, at 70 (1951). See also Restatement (Second) of Contracts § 308 (1981). "Nor have courts required that the promisee be inspired in whole or even in part by altruism. The test of intention to benefit may be met even though the promisee's motives were mixed. In applying the test, most courts have rightly looked to all the circumstances, without regard to the parol evidence *198 rule." E. Farnsworth, Contracts § 10.3 at 718-19 (1982).
After considering the oral arguments and briefs of counsel and thoroughly researching the issues, I conclude that DuPont was an intended beneficiary of the contract between the Birmingham Board and Yellow Cab and that he may therefore bring suit against Yellow Cab as such. As I read § 302, DuPont meets the test set out in subsection (1)(b). Yellow Cab agreed, not affirmatively and in so many words, but in effect and by clear implication, to pay to the extent of its liability for any injury received by an intended beneficiary of its contract with the Birmingham Board. The tenor of the contract suggests that all foreseeable and contemplated occupants of the vehicle would have rights under the contract. Certainly the bus driver would qualify as a foreseeable and contemplated occupant of the bus. To answer the question in its most pragmatic sense, the bus could not drive itself. See Dixie Stage Lines v. Anderson, 222 Ala. 673, 134 So. 23 (1931), holding that a bus company that had contracted to transport school children on a field trip could not relieve itself of liability for a negligent performance by employing an independent contractor. Specifically, Dixie Stage Lines stated: "The duty [to transport the school children] was to be performed by motorbus service, and the fact that defendant engaged by independent contract one of the buses, in the negligent operation of which plaintiff was injured, did not relieve defendant from liability to plaintiff." 222 Ala. at 675, 134 So. at 24. For the reasons stated, I would reverse the judgment of the trial court. Accordingly, I respectfully dissent from the opinion and judgment of the Court.
NOTES
[1] "`Novation' may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. More specifically, it is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. A novation is a mode of extinguishing one contract or obligation by another, that is, the substitution, not of a new paper or note, but of a new obligation in lieu of an old one, the effect of which is to pay, dissolve, or otherwise discharge it." 15 Williston, Contracts § 1865, at 585-86 (3d ed. 1972).
[2] Because there is nothing in the record to suggest that the Birmingham Board of Education made an affirmative acknowledgment of the extinction of Yellow Cab's duty and subsequent substitution of Metro to perform that duty, no further discussion regarding "novation" is necessary. Ingalls Iron Works Co. v. Fruehauf Corp., 518 F.2d 966 (5th Cir.1975).
[3] "[T]he new Restatement appears to merge the old Restatement categories with a Corbin perspective (which is not remarkable since Professor Corbin has had overriding influence in the new Restatement drafts). Corbin has observed that thousands of cases involving third party beneficiary recovery demonstrate that refusal of remedy would have been out of harmony with generally prevailing ideas of justice and convenience [and `that cases in which a remedy was refused have often come to be regarded later as in shocking conflict with existing mores.]'" J. Murray, Murray On Contracts, § 279, at 569 (rev. 2d ed. 1974).