This is an appeal from a judgment rendered on a jury verdict in favor of Mattie Mae Cooks, individually and as the personal representative of the estate of Theodore Cooks, Sr., and against Sea Calm Shipping Co., S.A. ("Sea Calm"), Sea Traders, S.A., and Hansa Heavy Lift Shipping GmbH ("Hansa")[1] for $500,000 in an admiralty workmen's compensation action brought under33 U.S.C. § 905 (1986). The issues concern the sufficiency of the evidence, the admission of expert testimony, and the instructions to the jury.
This case arose from an accident that occurred at the Port of Mobile aboard the M/V Uhenbels, a freighter owned by Sea Calm, a Greek corporation, and operated by Sea Traders, another Greek corporation. The Uhenbels was in Mobile to take on its cargo of six 90-foot shrimp boats that were to be transported to Nigeria. Each shrimp boat weighed about 140 tons. Hansa, a West German corporation, had been hired for its experience and expertise in loading bulky and heavy objects aboard freighters like the Uhenbels. Atlantic and Gulf Stevedore Company ("A 
G") was hired as stevedore to provide the labor to accomplish the task of loading the shrimp boats aboard the freighter. Theodore Cooks (hereinafter "Cooks") was employed by A G as a foreman of the "lashing gang."
The shrimp boats were to be secured to cradles that were supposed to be lashed to the deck of the freighter. Those cradles were large steel structures that weighed more than one ton each. The cradles had been placed on board the freighter prior to the loading of the shrimp boats, but had not been secured to the deck. It was Cooks's job to oversee the workers that were lashing the cradles to the deck of the freighter. The cradles were not stored flat on the deck, but were stored in a vertical position, resting on bases that were approximately 16 inches wide.
While Cooks was overseeing the operations of the lashing gang, a large crane that was on board the freighter was being prepared to raise the shrimp boats out of the water and onto the freighter. Although a number of witnesses testified that the normal practice in such situations is to turn the entire loading operation over *Page 214 
to the stevedore and his workers, in this case the crane was being operated by Chief Officer Rousitos of theUhenbels, at the instruction of Port Captain Puchstein, the Hansa employee who was supervising the loading process. While Rousitos was tightening the cables from the crane that were attached to one of the shrimp boats, the Uhenbels listed and two of the unsecured cradles fell to the deck. One of those cradles struck Cooks, injuring him severely.
Soon after the accident, Cooks filed an action against Sea Calm, Sea Traders, Hansa, and other defendants[2] alleging, among other things, that they were negligent and that their negligence was the proximate cause of his injuries. However, 12 days after the accident, Cooks died as a result of the wounds he had received. Following Cooks's death, the action was revived by Mattie Mae Cooks in her individual capacity as Cooks's widow and in her capacity as personal representative of Cooks's estate. That action was brought under 33 U.S.C. § 905
(1986), a provision of the Longshore and Harbor Workers' Compensation Act. This statute provides the exclusive remedy for longshoremen injured or killed during the course of their employment, and it requires the application of comparative negligence concepts. Atkinson v. Gates, McDonald Co.,665 F. Supp. 516 (S.D.Miss. 1987), aff'd, 838 F.2d 808, reh'g denied, 844 F.2d 788 (5th Cir. 1988); Gay v. Ocean Transport Trading,Ltd., 546 F.2d 1233, reh'g denied, 549 F.2d 203 (5th Cir. 1977). When an action is brought in state court for a tort that falls within the jurisdiction of the admiralty laws, the state court must apply the principles of admiralty. Kennedy EngineCo. v. Dog River Marina Boatworks, Inc., 432 So.2d 1214, 1215
(Ala. 1983).
The jury returned a verdict in Mrs. Cooks's favor in the amount of $500,000, apportioning responsibility among the appellants as follows: Hansa, 80%; Sea Traders, 15%; and Sea Calm, 5%. The trial court rendered a judgment in accordance with that verdict, and Sea Calm, Sea Traders, and Hansa appeal, arguing that the trial court erred by: (1) denying their motions for directed verdict; (2) allowing a safety expert to testify in Mrs. Cooks's behalf; (3) giving certain jury instructions requested by Mrs. Cooks; and (4) refusing to give certain jury instructions requested by the appellants.
A directed verdict in favor of the defendant is proper when there has been a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ.[3] Elder v. E.I. DuPont De Nemours Co., 479 So.2d 1243, 1249 (Ala. 1985). The appellants argue that they were entitled to a directed verdict for a number of reasons. First, they contend that Sea Calm, Sea Traders, and Hansa did not have a duty to ensure the safety of longshoremen like Cooks during cargo operations. They contend that that responsibility is borne by the stevedore during such operations. Their argument is based on a decision of the Supreme Court, Scindia Steam Navigation Co., Ltd. v. De LosSantos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). In that opinion, the Court, interpreting § 905(b), stated that the primary responsibility for ensuring the safety of longshoremen is on the stevedore during cargo operations, and the responsibility of the vessel (see the definition of "vessel," infra) is to keep the ship in such a condition that the stevedore will be able, by the exercise of ordinary care, to perform cargo operations with reasonable safety to longshoremen. The vessel also has a duty to warn the stevedore of any hazards that are known or that should be known. Scindia,451 U.S. at 166-67, 101 S.Ct. at 1622, 68 L.Ed.2d at 12.
However, the Court also recognized exceptions to that limited duty:
 "It is also accepted that the vessel may be liable if it actively involves itself in *Page 215 the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operations."
Id. (Emphasis added.) In sum, the vessel can avoid liability for injuries to longshoremen during cargo operations only by turning over all facets of those operations to the stevedore. In the instant case, there was sufficient evidence, in the form of testimony from Port Captain Puchstein, Chief Officer Rousitos, John Scanlan, an employee of A G, and others, to permit the jury to determine that both Puchstein and Rousitos were actively involved in loading the shrimp boats aboard theUhenbels and had active control of equipment being used in the cargo operations. Therefore, the vessel's duty to the longshoremen was not the usual limited duty expressed inScindia, but fell within the "active involvement" and "active control" exceptions expressed in that opinion. Id.
Because of the broad definition of the term "vessel" that is employed in cases of this kind, all of the appellants are exposed to liability if the negligence of their agents proximately caused Cooks's injuries and subsequent death. That definition is found at 33 U.S.C. § 902(21):
 "[T]he term vessel means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member."
(Emphasis added.)
The appellants' second argument is that either Sea Calm or Sea Traders was entitled to a directed verdict because there was no conclusive evidence presented regarding which of those two corporations employed Chief Officer Rousitos. That argument proceeds on the assumption that Rousitos could not be employed by both corporations at the same time. However, it is settled that an agent can be employed by two principals contemporaneously. Palmer v. Chamberlain, 191 F.2d 532, reh'g denied, 191 F.2d 859 (5th Cir. 1951); C.D. Chapman Co. v.G.P. Dowling Hardware Co., 205 Ala. 586, 88 So. 748 (1921). The question of the existence of an agency relationship is ordinarily a question of fact to be decided by the jury. LawlerMobile Homes, Inc. v. Tarver, 492 So.2d 297, 304-05 (Ala. 1986).
In the instant case there was sufficient evidence to allow the jury to conclude that Rousitos was employed by both Sea Calm and Sea Traders. Documentary evidence, in the form of a charter and a crew list, indicated that Rousitos and the rest of the crew were employed by Sea Traders. George Tsoublis, the captain of the Uhenbels, gave inconsistent testimony, at some times testifying that he and his crew were employed by Sea Calm, and at others, that they were employed by Sea Traders. This evidence provided more than a scintilla of evidence that the crew was employed by both Sea Calm and Sea Traders, and it created a fact question that could be resolved only by the jury. Lawler, supra. The jury's verdict against both Sea Calm and Sea Traders indicates that it found that both corporations employed Rousitos, and such a finding will not be disturbed by this Court unless it appears plainly and palpably wrong. Cityof Mobile v. Jackson, 474 So.2d 644 (Ala. 1985). In addition, the broad definition of "vessel" under § 902(21) includes both the owner (Sea Calm) and the operator (Sea Traders). That broad definition supports the jury's conclusion that both of those corporations were liable for Rousitos's actions.
Finally, the appellants contend that there was no evidence to support the jury's implicit finding that Puchstein and Rousitos were negligent and that their negligence was the proximate cause of the accident. However, Puchstein's testimony reveals that he supervised the loading and storage of the cradles, had overall supervision of the cargo operations, and supervised Rousitos's operation of the crane. *Page 216 
Rousitos's testimony confirmed that he was at the controls of the crane. Testimony from both Puchstein and Rousitos, as well as from two longshoremen that were aboard the ship, established that the cradles fell because the Uhenbels listed suddenly when Rousitos tightened the cables from the crane that was being used to lift the shrimp boats. The degree of that list was in controversy, but Al Marks, a safety expert, testified that a list in excess of 10 degrees was necessary to cause the cradles to fall. Marks also testified that Puchstein and Rousitos should not have started lifting the shrimp boats while the cradles were still unsecured. Marks's testimony was substantially corroborated by Lt. Kevin Kenworthy, of the Coast Guard, who investigated the accident soon after it occurred. That testimony constituted sufficient evidence to allow the jury to conclude that Puchstein and Rousitos were negligent and that their negligence caused the accident.
After reviewing the record, this Court finds that there was not a complete absence of proof regarding any issue raised by Cooks's complaint, and that there were numerous questions of fact that could be properly resolved only by the jury. Therefore, the trial court's denials of the appellants' motions for directed verdict were proper. Elder, supra.
Last, the appellants argue that the trial court committed reversible error by: (1) allowing Alan Marks, a safety expert, to testify concerning Hansa's obligation to perform its work in a manner that would ensure the safety of the longshoremen; and (2) refusing to give certain jury instructions requested by the appellants and giving certain jury instructions requested by Mrs. Cooks. However, the appellants fail to cite any legal authority in support of their arguments on either of those issues. Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant. Rule 28(a)(5), Ala.R.App.P.; Henderson v. Alabama A M Univ., 483 So.2d 392
(Ala. 1986), However, a cursory review reveals no palpable abuse of discretion by the trial judge in allowing Marks to testify. Meadows v. Coca-Cola Bottling, Inc., 392 So.2d 825
(Ala. 1981). Furthermore, several of the appellants' objections regarding jury instructions were raised for the first time on appeal. This Court will not hold a trial court to be in error unless that court has been apprised of its alleged error and has been given the opportunity to act thereon. Defore v.Bourjois, Inc., 268 Ala. 228, 105 So.2d 846 (1958). A review of the objections that were preserved reveals no error.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.
[1] Although the defendants will be referred to by their corporate names where appropriate, for brevity they will also be referred to as the "appellants."
[2] The appellants are the only defendants that remain parties to this action.
[3] This action was pending on June 11, 1987, and therefore is subject to review under the "scintilla rule." Ala. Code 1975, §12-21-12.