The defendant appeals from a denial of a JNOV and from an order granting a new trial for the plaintiff. The plaintiff cross-appeals, arguing that the damages awarded were inadequate.
On December 25, 1980, 10-year-old Jonathan Bernard Duke went deer hunting with his 1978 single-barrel Savage Arms 20-gauge "youth model" shotgun. Jonathan's *Page 857 
shotgun was loaded when he attempted to climb a tree stand used for deer hunting. As Jonathan began climbing the ladder of the tree stand, his shotgun slipped from his hand. The hammer of the shotgun struck a rung of the ladder below Jonathan and the shotgun discharged. Jonathan was shot in the left hip and was severely injured.
Acting through his father, Jonathan sued the manufacturer of the shotgun, Savage Industries, Inc. ("Savage"), alleging that the shotgun was "defective" within the meaning of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and that Savage had wantonly designed, manufactured, and distributed the shotgun. Specifically, Jonathan claimed that the rebounding hammer safety on the shotgun was defective and that as a result of the defect it did not prevent the shotgun from inadvertently discharging.
At trial, Jonathan testified that his parents gave him the shotgun when he was eight years old. Jonathan testified that he had been taught how to use the shotgun and that he had been hunting by himself several times before the accident occurred. He also stated that his father had told him never to climb a tree stand with a loaded shotgun.
A firearms consultant for the plaintiff, Stanton Berg, testified that the rebounding hammer safety is a notch used to prevent the hammer of the shotgun from striking the firing pin and thus to prevent a discharge in the event of an accidental blow to the back of the hammer.
Robert Greenleaf, a sales engineer for Savage, was called by the plaintiff as an adverse witness. Greenleaf testified that on two occasions prior to 1968, Savage youth shotguns with the same type of rebounding hammer safety as the one on Jonathan's shotgun, accidentally discharged after being dropped, injuring two youths. In 1968, Savage performed tests on the rebounding hammer safety. Greenleaf testified, based on the test results and the weight of the shotgun, that the shotgun would discharge after being dropped 8 inches. He stated that as a result of tests on the rebounding hammer safety, Savage added an automatic hammer block safety to certain adult model shotguns in 1970 but did not add a second safety to the youth model shotguns until 1979.
Lawdon Yates, an expert in forensic sciences, testified that Jonathan's shotgun fell approximately 5 to 7 feet before the hammer struck a rung of the ladder and discharged. Yates stated that no shotgun of this type could withstand such a fall and not discharge.
After deliberating awhile, the jury informed the court that it was deadlocked. The trial court gave the jury additional charges in an attempt to help the jury reach a verdict. The jury did return a verdict. However, the court refused to accept the verdict and did not allow the attorneys for either party to see the verdict. The trial court sent a new verdict form to the jury by way of the bailiff. The jury returned a verdict, using the new verdict form, and awarded the plaintiff $50,001 in damages.
The plaintiff then objected to not being allowed to see the first verdict form. At that point, the trial court informed the attorneys that the jury had given its first verdict by modifying the verdict form the court had given it, and that instead of returning a general verdict as the court had intended it to do, the jury separated its awards, awarding the plaintiff $50,000 in punitive damages and $1 in compensatory damages under the wantonness count.
Savage moved for a JNOV. The plaintiff filed a motion for a new trial and supported his motion by affidavits of the plaintiff's lawyers and several members of the jury. In the affidavits, the jurors stated that when the bailiff gave them the second verdict form, he instructed them not to write each amount of damages (punitive and compensatory) separately but to combine the two numbers and write the total amount. Savage then filed a motion to strike the jurors' affidavits. The trial court denied the motion for JNOV. The trial court granted the motion to strike the jurors' affidavits, with the exception of the portions of the affidavits concerning the *Page 858 
bailiff's instruction to the jury. The trial court granted the plaintiff's motion for a new trial, stating that "[t]he court grants the plaintiff's motion for a new trial based on the sole issue that an instruction was given to the jury by a person other than the court and that prejudice may have resulted to the plaintiff." (C.R. 872). The plaintiff cross-appealed, claiming that the compensatory damages award was grossly inadequate and that he was therefore entitled to a new trial.
The first issue we will discuss is whether the trial court abused its discretion in granting the plaintiff a new trial based on the bailiff's instructions to the jury.
The discretion to grant or deny a new trial rests within the sound discretion of the trial court, and exercise of that discretion will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial erred. Green Tree Acceptance, Inc. v. Standridge,565 So.2d 38 (Ala. 1990).
"All conversation between jurors and officers of the court does not amount to misconduct per se, and a showing of such communication does not raise the presumption that it improperly influenced the jury." Donahoo v. State, 371 So.2d 75, 78
(Ala.Crim.App. 1979), cert. denied, 371 So.2d 79 (Ala. 1979). In this case, the bailiff's communication to the jury amounted to more than a mere conversation with the jury. The bailiff gave instructions to the jury, and this misconduct could have influenced the jury's verdict. We find no abuse of discretion in the trial court's grant of a new trial.
The second issue in this case is whether the trial court erred in submitting the AEMLD claim to the jury. Savage argues that the trial court erred in submitting the AEMLD claim to the jury because, it argues, Jonathan was guilty of contributory negligence as a matter of law and, therefore, Savage was entitled to a directed verdict. The plaintiff argues that Savage failed to meet its burden of proving that the plaintiff possessed the "discretion, intelligence, and sensitivity to danger of an ordinary 14-year-old child."
A directed verdict is proper only when there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable persons would differ.[1] Elder v. E.I. DuPont De Nemours Co.,479 So.2d 1243 (Ala. 1985). When reviewing a denial of a motion for a directed verdict or JNOV, the appellate court must examine the evidence in a light most favorable to the non-moving party.Huntsville Madison County R.R. Authority v. Alabama Indus.R.R., 505 So.2d 341 (Ala. 1987).
A child between the ages of 7 and 14 is prima facie incapable of contributory negligence. Williams v. McMillan,352 So.2d 1347 (Ala. 1977). However, a child between the ages of 7 and 14 may be shown to be capable of contributory negligence; that may be shown by evidence that he possesses the discretion, intelligence, and sensitivity to danger that the ordinary 14-year-old possesses. Smith v. Bradford, 475 So.2d 526 (Ala. 1985), appeal after remand, 512 So.2d 50 (Ala. 1987).
 "For a court or a jury to find contributory negligence, it must be shown that the plaintiff had knowledge of the danger and appreciated the danger under the circumstances and, yet, put himself 'in the way of the danger.' Wilson v. Alabama Power Co., 495 So.2d 48, 49 (Ala. 1986). To apply this standard to a child, the Court must examine the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of the child. See, Lyle v. Bouler, 547 So.2d 506 (Ala. 1989)." *Page 859 
Jones v. Power Cleaning Contractors, 551 So.2d 996, 999 (Ala. 1989).
A defendant who raises the affirmative defense of contributory negligence has the burden of proving that the plaintiff failed to use due care for his own safety, or the safety of his property, and that the failure to do so was the proximate cause of the plaintiff's injury. American FurnitureGalleries, Inc. v. McWane, Inc., 477 So.2d 369 (Ala. 1985). The issue of contributory negligence cannot be determined as a matter of law where different inferences and conclusions may reasonably be drawn from the evidence. Id.
After a review of the record in this case, we hold that Savage was not entitled to a directed verdict on the AEMLD claim. Therefore, the trial judge correctly denied the motion for a directed verdict. However, the judge erred in refusing to charge the jury on contributory negligence, assuming, arguendo, that his decision not to so charge was based on the age and maturity of the child. Nevertheless, the error is harmless in this case, because this Court has affirmed the grant of a new trial on other grounds.
For the purposes of retrial, we would call the court's attention to the recent case of Dennis v. American Honda MotorCo., 585 So.2d 1336, 1342 (Ala. 1991), in which we held that "contributory negligence relating to accident causation will not bar a recovery in an AEMLD action," but that "[l]ack of causal relation, product misuse, and assumption of risk," if proven, would bar recovery in an AEMLD action. Dennis, 585 So.2d at 1342.
The third issue is whether the trial court erred in submitting the wantonness claim to the jury. Savage argues that there was no evidence from which an inference of wantonness could be made and that Savage was entitled to a directed verdict on the wantonness claim. The plaintiff argues that there was evidence to support a finding of wantonness, arguing that the evidence showed that Savage designed, manufactured, and sold this youth model shotgun with full knowledge that the safety device was defective and unreliable.
 " ' " 'Wantonness' is the conscious doing of some act or the omission of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result. . . . Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster. . . . Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand. . . . Knowledge need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference." ' "
Smith v. Bradford, 475 So.2d at 528-29 (quoting Deaton, Inc. v.Burroughs, 456 So.2d 771, 775 (Ala. 1984).
We find a scintilla of evidence from which the jury could have determined that Savage's conduct was wanton. There was evidence that Savage knew of two prior instances where the youth model shotgun had been dropped and had injured someone. There was also evidence that Savage had performed tests on the rebounding hammer safety used in the youth shotgun and had subsequently added a second safety to adult model shotguns in 1970 but had not added a second safety in the youth model shotguns.
Any discussion of the plaintiff's cross-appeal concerning the inadequacy of compensatory damages is pretermitted, and that cross-appeal is dismissed as moot.
We affirm the order granting a new trial.
87-1077, AFFIRMED.
87-1162, DISMISSED AS MOOT.
HORNSBY, C.J., and MADDOX and SHORES, JJ., concur.
HOUSTON, J., concurs in the result.
[1] The plaintiff's original complaint was filed before June 11, 1987; therefore, the "scintilla" rule applies.